**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY L. VIOLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-1411 (TSC) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al*., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants, the U.S. Department of Justice, ("Defendants"), by and through agency counsel, respectfully requests this Court to enter summary judgment in its favor on Plaintiff's claims under the Freedom of Information Act ("FOIA"), on the grounds that there are no material facts in dispute and Defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

In support of this motion the Court is referred to the Memorandum of Points and Authorities, a Renewed Statement of Material Facts as to Which There Are No Genuine Issues, the declarations of **David Luczynski**, Attorney Advisor with the Executive Office of United States Attorneys ("EOUSA"), (hereinafter, "Luczynski Decl.") and **David Hardy**, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia for the Federal Bureau of Investigation ("FBI") (hereinafter, "Hardy Decl. 2") (Attachment 2 with Exhibits), and the First Hardy Declaration (hereinafter, "Hardy Decl."); and a proposed order.

Defendants have satisfied their obligations under the Freedom of Information Act, 5 U.S.C. § 552, in response to Plaintiff's request for information.  Plaintiff, who is proceeding

*pro se*, should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless the Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents. *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992). Defendants also directs Plaintiff's attention to LCvR 7(h), and Fed. R. Civ. P. 56(c) and 56(e), which provide, in pertinent part, as follows:

**(c)** **Procedures**

**(1)** **Supporting Factual Positions**. A person asserting that a fact cannot be or is genuinely disputed support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

\* \* \* \*

**(4)** **Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated.

**(e)** **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purpose of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(c) and (e).

Because this is a dispositive motion, Defendants have not sought *pro se* Plaintiff, Mr.

Viola's, consent before filing.  *See* LCvR 7(m).

Date: June 1, 2017

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division


_____/s/_____
By:    TAMMY A. HOLLOWAY, MD Bar
       Special Assistant United States Attorney
       Civil Division
       555 4th Street, N.W.
       Washington, D.C. 20530
       (202) 252-2633 / (202) 252-2599 (Facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ANTHONY L. VIOLA,                )
                                 )
                Plaintiff,        )
                                 )
        v.                        )          Civil Action No. 16-1411 (TSC)
                                 )
U.S. DEPARTMENT OF JUSTICE, *et al.*,  )
                                 )
                Defendants.       )

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

On behalf of the U.S. Department of Justice, ("Defendants"), the undersigned counsel respectfully submits this Memorandum of Points and Authorities in Support of Federal Defendants' Renewed Motion for Summary Judgment in response to the complaint filed *pro se* by Anthony Viola ("Plaintiff"). Summary Judgment should be entered in Defendants' favor on all claims in Plaintiff's complaint pursuant to Fed. R. Civ. P. 56.

## BACKGROUND AND FACTS

Defendants hereby incorporate as though fully set forth herein the accompanying Renewed Statement of Material Facts Not in Genuine Dispute and the attachments thereto, including the following documents:

- **David Luczynski**, Attorney Advisor with the EOUSA, (hereinafter, "Luczynski Decl."), attached as Attachment 1 to Defendants' SOMF.

- **David Hardy**, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia for the Federal Bureau of Investigation ("FBI"), Second Hardy Declaration attached as Attachment 2 to Defendants' SOMF (hereinafter, "Hardy Decl. 2"), and the First Hardy Declaration (hereinafter, "Hardy Decl.") attached as Attachment 3 to Defendants' SOMF.

## INTRODUCTION

Defendants are entitled to judgment as a matter of law because, in response to Plaintiff, Anthony L. Viola's request for information made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Defendants have (1) conducted a reasonable search to locate records responsive to Plaintiff's FOIA request; (2) produced all non-exempt portions of records responsive to Plaintiff's FOIA request; and (3) properly withheld information pursuant to the statutory exemptions.

## ARGUMENT

In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), Defendants support this summary judgment motion by submitting the declarations, attachments, and exhibits of EOUSA and FBI's agency officials. These declarations, attachments, and exhibits collectively provide the Court and Plaintiff with an explanation of the procedures used by EOUSA and FBI to search for, review, and process the records responsive to Plaintiff's FOIA request, and their justifications for withholding records in full or in part pursuant to FOIA Exemptions 3,6, and 7, 5 U.S.C. §§§§§§§§ 552 (b)(3), (b)(6), (b)(7), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E); and Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2). Luczynski Decl. ¶ 3 and 16; Hardy Decl. 2 ¶ 12. FOIA Exemption 3 applies in conjunction with 18 U.S.C. § 2510-20. Hardy Decl. 2 ¶ 12.

Specifically, the declarations referenced in Defendants' SOMF provide a detailed account of the extensive searches conducted by EOUSA and FBI in response to Plaintiff's FOIA request. The Luczynski and Hardy declarations demonstrate that Defendants carefully reviewed the responsive records, and properly withheld information subject to FOIA exemptions. Thus, the declarations read in conjunction with the responsive records, is "adequate to inform Plaintiff of the nature of the information withheld and to permit the Court to determine the applicability of

2

each exemption claimed." *See Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 43-44 (D.D.C.

2009).  Any more specificity would result in disclosure of the very information withheld." *Id*.  The

Court should therefore find that the declarations are sufficient and enter summary judgment in

favor of Defendants.

## I.   LEGAL STANDARDS

### A.     Rule 56 – Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  The

party seeking summary judgment must demonstrate the absence of a genuine issue of material

fact.  *See Celotex*, 477 U.S. at 248.  A genuine issue of material fact is one that "might affect the

outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. In determining

whether a genuine issue of material fact exists, the trier of fact must view all facts, and

reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  "By its very

terms, this standard provides that the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment;  the

requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. 242, 247-

48 (emphasis in original). The moving party may discharge this burden by "'showing' – that

is point out to the [Court] – that there is an absence of evidence to support the non-moving party's

case." *Sweats Fashion, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed. Cir. 1987); *see

also Celotex*, 477 U.S. at 332.  Once the moving party has met its burden, the non-moving party

may not rest upon the mere allegations or denials of his pleadings, and must establish more

3

than "the mere existence of a scintilla of evidence" in support of its position.

*Anderson*, 477 U.S. at 252.  Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]."  *Id.*

## B.  Summary Judgment Standard in FOIA Cases

"The Freedom of Information Act, 5 U.S.C. § 552(a), provides that '[e]ach agency shall make available to the public' records in its possession unless the information is covered by one of Section 552(b)'s nine statutory exemptions."  *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012); *see* 5 U.S.C. § 552(b).  The "vast majority" of FOIA cases are decided on motions for summary judgment.  *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D. D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*").  An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.  *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"

*CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## II. LEGAL REQUIREMENTS OF FOIA

### A. Legal Requirements of Search

An agency's search for records in the context of a FOIA case is adequate if it was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted); *Campbell v. Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998). The agency must explain the "scope and method of the search [in] reasonable detail[,]" but need not provide "meticulous documentation [of] the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982); *see also Wolf v. CIA,* 569 F. Supp.2d 1, 7 (D.D.C. 2008) (quoting *Perry v. Block)*. Rather, the agency must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.*

A search is not inadequate merely because it failed to "uncover[] every document extant," *SafeCard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1201 (D.C. Cir. 1991). Specifically, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Nation Magazine v. U.S. Customs Serv*., 71 F.3d 885, 890, 892 n.7 (D.C. Cir. 1995) (holding that

agency need only make "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested"). In short, a search's adequacy is measured by the methods employed, not by the results obtained. *Weisberg*, 745 F.2d at 1485. An agency can establish that it has performed a good faith search by submitting a declaration specifying the search terms used and type of search performed, and averring that all files likely to contain responsive records were searched. *Stephens v. Dep't of Justice*, --- F.Supp. 2d ---, 2014 WL 1015803, at *3 (D.D.C. March 18, 2014) (*citing Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973). Courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground SaucerWatch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**B.  Legal Requirements Related To FOIA Exemptions**

The agency bears the burden of demonstrating that the documents it has withheld fall into one of the enumerated FOIA exemptions. *See Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). If a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information, *see* 5 U.S.C. § 552(b); however, non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242,

260 (D.C. Cir. 1977).   To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D. D.C. 2008).   "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv*., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index to "permit adequate adversary testing of the agency's claimed right to an exemption."  *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data*, 566 F.2d at 251; *Vaughn*, 484 F.2d at 828).   The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record."  *National Treasury*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet this burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. U.S. Postal Service*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

### III.        SUMMARY OF ARGUMENT

In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), Defendants supports this summary judgment motion by submitting the declarations, attachments, and exhibits of EOUSA and FBI agency officials (David Luczynski and David Hardy, respectively).   These declarations, attachments, and exhibits collectively provide the Court and Plaintiff with an explanation of the procedures used by Defendants to search for, review, and process the records responsive to Plaintiff's FOIA request, and their justifications for withholding records in full or in part pursuant to FOIA Exemptions 3,[1]6, and 7, 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), and  Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2). *Luczynski Decl*. ¶ 3 and 16; *Hardy Decl*. 2 ¶ 12.

Specifically, Defendants' declarations provides a detailed account of the extensive searches conducted by EOUSA and FBI in response to Plaintiff's FOIA request, and demonstrates that their searches were reasonable and adequate.   Defendants declarations demonstrates that EOUSA and FBI carefully reviewed the responsive records, and properly withheld information subject to FOIA exemptions.   Thus, the declarations read in conjunction with the responsive records, provides a sufficiently detailed description of the Defendants' search and is "adequate to inform Plaintiff of the nature of the information withheld and to permit the Court to determine the applicability of each exemption claimed." *See Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 43-44 (D.D.C. 2009).   Any more specificity would result in disclosure of the very information withheld." *Id.*   The Court should therefore find that the declarations are sufficient and enter summary judgment in favor of Defendants.

---

[1]FOIA Exemption 3 applies in conjunction with 18 U.S.C. §§ 2510-20. *Hardy Decl*. 2 ¶ 12.

Plaintiff claims in his complaint that the EOUSA and FBI failed to respond to his FOIA request, failed to respond in a timely manner, and withheld the documents that he was requesting.  However, the Luczynski  and Hardy declarations demonstrate that Defendants could not provide Plaintiff with responsive records without compromising ongoing law enforcement proceedings, and that Defendants properly withheld information pursuant to 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), and  Privacy Act Exemption (j)(2), 5 U.S.C. § 552a (j)(2).  *Luczynski Decl*. ¶ 6 and *Hardy Decl*. 2 ¶ 12.  Since Defendants declarations thoroughly explain the justifications for withholding the records responsive to Plaintiff's request with reasonably specific detail, and clearly demonstrates that the information withheld logically falls within claimed exemptions, and is not controverted by either contrary evidence in the record nor by evidence of agency bad faith, Defendants are entitled to  summary judgment  on  Plaintiff's claims.

## IV.      DEFENDANTS CONDUCTED A REASONABLE SEARCH

The Defendants' search, which is described in detail in each declaration, clearly satisfied its obligations under the FOIA.  An agency's search will be deemed reasonable if the agency searches the "places most likely to contain responsive documents."  *Carter, Fullerton & Hayes v. FTC*, 637 F. Supp. 2d 1, 7 (D.D.C. 2009).  Here, Defendants' declarations clearly demonstrate that EOUSA and FBI have more than satisfied this standard in connection with Plaintiff's FOIA request.

EOUSA only performed the search for the portion of plaintiff's FOIA request asking for public records.  *See Luczynski Decl. at ¶ 7.*  The other part of the request was categorically denied since it was seeking information about third parties.[2]  *Id*.  Plaintiff did not provide any

_____

[2]EOUSA initially intended to deny plaintiff's request through the application of a *Glomar* exemption. However, additional information made it clear that plaintiff was already aware of the existence of records, an aspect

information which would permit him to receive information concerning individuals other than himself.  *Id*.  Since receipt of third party information was denied, the part of the search concerning third parties was omitted.  *Id*.  After receiving plaintiff's FOIA request, EOUSA undertook a search for documents responsive to plaintiff's FOIA request.  *Id*.  Each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office; thus, upon receiving plaintiff's request for records relating to him in the Northern District of Ohio. EOUSA forwarded the request to EOUSA's FOIA contact for the Northern District of Ohio ("the FOIA Contact").  *Id*.

The FOIA Contact began a systematic search for records using name "Anthony L. Viola" and search terms provided by the requester in his FOIA request to determine the location of any and all files responsive to his request.  *Id*.  In connection with its search, the FOIA Contact used the computer tracking system for the United States Attorney Offices, the "LIONS" system.  *Id*. The "LIONS" system is the computer system used by United States Attorney's offices to track cases and to retrieve files pertaining to cases and investigations.  *Id*.   Through the "LIONS" system, the user can access databases which can be used to retrieve the information based on an individual's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number for any court cases.  *Id*.  In this case, the FOIA Contact used the LIONS system to locate records responsive to plaintiff's FOIA request.  *Id*.  All documents responsive to plaintiff's FOIA request would have been located in the USAO/OHN. *Id*.  There are no other records systems or locations within EOUSA in which other files pertaining to plaintiff's request were maintained.  *Id*.

---

which application of a *Glomar* exemption means to protect.  While plaintiff has knowledge about records' existence, he is not entitled to receive those records when all of the records in question concern third party individuals.  This is the exact situation which favors an application of a categorical denial of the request that on its face is seeking clearly exempt material.

All EOUSA documents responsive to plaintiff's FOIA request were located through the United States Attorney's Office for Northern District of Ohio, ("USAO/OHN"). *See Luczynski Decl. at ¶ 8.* The records responsive to plaintiff's request are maintained in the USAO/OHN Criminal Case File System (Justice/USA-007). *Id.*

EOUSA has no other records systems or locations within the Northern District of Ohio in which other files pertaining to plaintiff are maintained. *See Luczynski Decl. at ¶ 9.*

Upon the FBI's determination to pierce the original *Glomar* response concerning FOIA subject Judge Donald Nugent as it relates to the specific items detailed in Plaintiff's request, the FBI conducted a CRS index search for responsive records employing the UNI application of ACS and a Sentinel index search. *See Hardy Decl. 2 at ¶ 22.* The FBI searched the following search terms: "Nugent, Donald," "Nugent, D." and "Nugent, Judge, Donald." *Id.* The FBI's search included a three-way phonetic breakdown of "Nugent, Judge, Donald" and "Nugent, Donald" and an on-the nose search for "Judge Donald Nugent." *Id.* The FBI's CRS search encompassed records maintained in FBIHQ as well as all FBI's field offices. *Id.* The FBI used information in Plaintiff's request letters, and litigation filings, such the date the public became aware of the wiretap conversations in a federal probe of county corruption in Cuyahoga County, Ohio, to facilitate the identification of responsive records. *Id.* As a result of this search effort, the FBI identified a cross-reference file number 194B-CV-73474 indexed to FOIA subject Donald Nugent pertaining to the county corruption investigation in Cuyahoga County, Ohio. *Id.*

On or about March 10, 2017, RIDS contacted the FBI Cleveland Field Office Special Agent ("CVFO SA") leading the investigation documented on file number 194B-CV-73474 referencing Donald Nugent, and inquired if the investigations were still pending. *See Hardy*

*Decl*. 2 at ¶ 23.  On or about March 13, 2017, the CVFO SA advised that several outstanding appeals remain pending, and release of the information at this time could reasonably be expected to interfere with the enforcement proceeding.  *Id*.  In addition, the CVFO SA advised the Title III wiretap recordings, and transcripts are still under court seal.  *Id*.  Finally, the CVFO SA advised even the sealing order is under seal.  *Id*.

On or about March 31, 2017, the CVFO SA provided RIDS with all the responsive FD-302 records referencing Judge Donald Nugent in order for RIDS to review the  material from the pending file in order to assert underlying exemptions.  *See Hardy Decl*. 2 at ¶ 24.  The responsive tapes and transcripts were under court seal; therefore, were not provided.  On April 28, 2017, upon completion of the review of the responsive records, the FBI advised Plaintiff the specific material requested on subject Judge Donald Nugent is located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).  *Id*.  The FBI also advised Plaintiff that portions of those same records are also exempt pursuant to underlying Exemptions (b)(3) [18 U.S.C. Section 2510-20], (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  *Id*.  Finally, the FBI advised Plaintiff that "tape recordings [both oral and transcripts] of Judge Nugent talking with political leaders James Dimora and Frank Russo" are under seal pursuant to a court order issued by the United States District Court for the Northern District of Ohio, and sealed court records are not eligible for release under the FOIA.  *Id*.

FBI RIDS conducted a search reasonably calculated to locate all responsive records subject to FOIA.  *See Hardy Decl*. 2 at ¶ 25.  Given its comprehensive nature and scope, the CRS is the principal records system searched by RIDS, to locate information responsive to most FOIPA requests, because the CRS is where the FBI indexes information about

individuals, organizations, events, and other subjects of investigative interest for future retrieval. *Id*. The CRS is the FBI system where records responsive to this request would reasonably be found. *Id*. Plaintiff's request is for specific information about subject Judge Donald Nugent as detailed in his request concerns a federal probe of county corruption in Cuyahoga County, Ohio. *Id*. Such information would reasonably be expected to be maintained and indexed in the CRS and located using the ACS and Sentinel index search methodology and terms described above. *Id*. The FBI concluded that these are the only records systems likely to maintain responsive records, and that no other records systems are likely to maintain responsive records. *Id*.

## V. <u>DEFENDANTS PROPERLY ASSERTED FOIA EXEMPTIONS</u>

On January 26, 2017, EOUSA notified plaintiff that processing of his request was completed and that all of the public records he requested are being released to him. *See Luczynski Decl*. at ¶ 6. Plaintiff was also informed that since he has requested records concerning third parties, records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of the request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. *Id*. Since Plaintiff did not furnished a release, death certificate, or public justification for release, the release of records concerning a third party was deemed to be result in an unwarranted invasion of personal privacy that would be in violation of the Privacy Act, 5 U.S.C.§ 552a. *Id*. Any such records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552. *Id*.

The Second Hardy Declaration supplements, and incorporates by reference the information previously provided in the First Hardy Declaration. *See Hardy Decl. 2 at ¶ 4*. As

13

detailed in the First Hardy declaration, the FBI will continue to rely on the FBI's justification for

an Exemption 6 and 7(C) *Glomar* response and failure to exhaust determination for third party

subject Paul Tomko (*See* First Hardy Declaration, ¶¶ 15-18).  In regards to Plaintiff's request for

FD-302s and agent's interview notes referencing Judge Donald Nugent and tapes and transcripts

of taped telephone conversations between Judge Nugent and third parties as it relates to a public

corruption investigation in Cuyahoga County, Ohio, after further review, the FBI pierced the

original *Glomar* response and is now categorically denying the records as exempt pursuant to

FOIA exemptions 7(A), 6, and 7(C), and other underlying exemptions.  *Id*.  In addition, the tapes

and transcripts are under court seal.  *Id*.

In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the Second

Hardy Declaration provides FBI's justification for categorically withholding records in full

pursuant FOIA exemptions 7(A), 6, and 7(C).  *See Hardy Decl*. 2 at ¶ 5.  Also, in light of the

D.C. Circuit's ruling in *Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir.

2000), the FBI is also asserting Exemptions 3, 7(D), and 7(E) of the FOIA as additional

grounds for withholding records and information from this pending investigation, and other

related investigations and prosecutions.  *Id*.  In addition, the tapes and transcripts are under

court seal.  *Id*.

Upon FBI's review of Plaintiff's Opposition to Defendant's Motion for Summary

Judgement (See ECF, Document No. 18, page 1, PART ONE) the FBI conducted a Public

Access to Court Electronic Records ("PACER") search of the case *USA v. Anthony O.*

*Calabrese, III*, case No. 1:11-cr-437, N.D. Ohio, cited by Plaintiff as evidence the defense

council in that case disclosed FOIA subject Judge Donald Nugent was intercepted in a

telephone call in a larger public corruption investigation.  *See Hardy Decl*. 2 at ¶ 6.  The

14

Plaintiff believes he met the "prior disclosure … [of] specific information in the public domain that appears to duplicate that being withheld," and the tapes and transcription of the tapes at issue in this FOIA request should be processed and released.  *Id.*

Judge Sara Lioi, in the matter before the United States District Court, Northern District of Ohio (See ECF, 11-cv-00437-SL, Docket No. 104) detailed the litigation issues relating to Defendant Calabrese.  *See Hardy Decl.* 2 at ¶ 7.  Judge Lioi explained that defendant Anthony Calabrese, III, asked for reconsideration of the Court's April 27, 2012, Opinion and Order denying his motion to have the present case reassigned to a district judge by random draw (See ECF, 11-cv-00437-SL, Docket No. 102 [filed under seal]).  *Id.*  There were a multiple of charges pending against Calabrese stemming from an extensive three-year federal investigation into allegations of public corruption in Cuyahoga County, Ohio.  *Id.*  Calabrese was one of 50 individuals who have been charged in connection with the government's investigation.  *Id.*  The present case against Calabrese was originally randomly assigned to the docket of the Honorable Donald Nugent.  *Id.*  As the case was related to other cases under Judge Lioi,  Judge Nugent transferred the case to Judge Lioi as a related case under Local Criminal Rule 57.9(b)(3).  *Id.*

Following the reassignment, Calabrese moved to have the case returned to the random draw, alleging that the government withheld information from Judge Nugent that would have necessitated his recusal from this case.  *See Hardy Decl.* 2 at ¶ 8.  Calabrese produced a transcript of a brief telephone call involving Judge Nugent and one of Calabrese's alleged co-conspirators that represented one of over 44,000 phone calls that were intercepted by the FBI during its investigation.  *Id.*  Calabrese also referenced a second phone call involving Judge Nugent and another alleged co-conspirator.  *Id.*  The two calls

had been the subject of a local newspaper article, and both alleged co-conspirators were Cuyahoga County public officials. *Id.* After reviewing the record, including the materials attached to Calabrese's motion to transfer, the Court determined that the case had been properly transferred to Judge Lioi as a related case, pursuant to the local criminal rules. *Id*.

Calabrese represented that his counsel received from an "unknown source" – a portion of an FBI Form 302 summarizing a December 1, 2010 interview between Judge Nugent and FBI agents. *See Hardy Decl*. 2 at ¶ 9. During the course of the interview, it appears that the FBI agents advised Judge Nugent of the existence of the public corruption investigation, and Judge Nugent expressed his surprise at the breath of the alleged corruption in Cuyahoga County. *Id.* Because this interview took place before the case was randomly assigned to Judge Nugent – a fact previously unknown to Calabrese and the present Court – Calabrese insists that Judge Nugent was required to recuse himself, and return the case to the random draw. *Id.* The Plaintiff in this instant action, believes this is an "official acknowledgement" of the investigation where Judge Nugent is recorded and the "tapes and transcripts" should be processed and released. *Id.*

The FBI's long-standing policy has been to provide an Exemption 6 and 7(C) *Glomar* response, neither confirming nor denying the existence of records in those instances where an individual seeks access to information regarding a third party but fails to provide a Certificate of Identity (a.k.a. Privacy Waiver) from the third party, or proof of death of that third party. (*See* 28 C.F.R. § 16.3(a)). *See Hardy Decl*. 2 at ¶ 10. The third prong of the FBI's third party *Glomar* policy is whether the requester is able to provide sufficient evidence of a significant public interest in disclosure of the materials sought. *Id.* Without receipt of a Privacy Waiver, proof of death, or a showing of significant public interest in the

disclosure of the materials sought, the FBI will neither confirm nor deny the existence of records pertaining to a third party pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C).  *Id.*  Such a response is necessary because members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a criminal law enforcement agency such as the FBI, and cast them in an unfavorable or negative light.  *Id.*  Moreover, release of names and/or other personal information about these individuals could cause unsolicited and unnecessary attention to be focused on them.  *Id.*

Individuals – whether they are suspects, witnesses, law enforcement personnel, or in this case, a sitting U.S. District Judge – have a strong interest in not being associated unwarrantedly with alleged or actual criminal activity.  *See Hardy Decl.* 2 at ¶ 11.  The Plaintiff contends in his Complaint, "…since Judge Nugent's secretly-recorded conversations and Paul Tomko's prosecution have already been covered by the news media, there can be no expectation of privacy concerning the materials requested."  (See ECF, Complaint, Document 1, page 14, ¶ 47.)  *Id.*  The mere mention of an individual in news article in the context of unofficial information not publically acknowledged by an agency does not abolish the third party individuals' privacy interests.  *Id.*  As detailed in the First Hardy Declaration, without an official acknowledgement by the FBI and or justification establishing the public interest in disclosure outweighs the substantial personal privacy interests of the third party individual, proof of death, or a signed Privacy Waiver, the FBI properly neither confirmed nor denied (*Glomar* response) the existence of records on these third parties individuals requested by Plaintiff.  *Id.*  Third party individuals maintain a strong privacy interest in not having their information disclosed.  *Id.*

In this particular case; however, and based on information publically available in

Docket No. 102, 11-cv-00437-SL, [filed under seal]), the Defendant Calabrese himself

stated, the records came from an "unknown source," but Judge Lioi agreed (See ECF, 11-cv-

00437-SL, Docket No. 104, page 6) the "production of the FBI interview summary

demonstrates that Judge Nugent was aware at the time of the [case] transfer of both the

interception of the calls, and of the fact that he had been interviewed in connection with the

FBI's investigation."  *See Hardy Decl*. 2 at ¶ 12.  Judge Lioi agreed Defendant Calabrese

was correct that Judge Nugent's knowledge of these facts changes the analysis, but not for

the reasons defendant has stated.  *Id.*  Judge Lioi concluded, "It is now clear that Judge

Nugent – with full awareness that his calls had been captured and that he had been

interviewed by the FBI – determined that he was not required to recuse, and elected to

transfer the case as related."  *Id.*  Based on this information establishing Judge Nugent's

knowledge of the taped conversations when making the decision of transferring the related

case, and admitting to being interviewed by the FBI for that specific public corruption

investigation, the FBI has determined piercing its original *Glomar* is warranted.  *Id*.

Consequently, the FBI searched for, and processed responsive records relating to Judge

Nugent's relationship to the specific public corruption investigation.  *Id*.

## A. Defendant FBI Properly Withheld Entire Case File Under FOIA Exemption 7(A)

FOIA Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause one of

the six harms enumerated in § 552(b)(7).  5 U.S.C. § 552(b)(7); *see Concepcion v. FBI*, 606 F.

Supp. 2d 14, 36 (D.D.C. 2009) (Under Exemption 7, "an agency must establish that the records

in issue were compiled for law enforcement purposes, and that the material satisfies one of the

subparts of Exemption 7.") (citing *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).  Before

an agency can receive protection from disclosure by invoking a harm enumerated in Exemption

7, it must first demonstrate that the record or information at issue was compiled for law

enforcement purposes.

This Circuit has repeatedly held that in order to satisfy this threshold requirement, law

enforcement agencies need only show that the records at issue are related to the enforcement of

federal laws and that the enforcement activity is within the law enforcement duty of the agency.

*Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) ("[A] criminal law enforcement

agency's invocation of 'law enforcement purposes' warrants greater deference than do like

claims by other agencies.") (citing *Pratt*, 673 F.2d at 420-21); *Blackwell*, 646 F.3d at 40 (only a

"rational nexus" between criminal law enforcement agency's duties and the withheld item need

be shown).  An agency need not link its collection of material to a specific or ongoing

investigation.  *See*, e.g., *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

The FBI has carefully examined all records responsive to Plaintiff's request for

specific records concerning Judge Donald Nugent as they relate to the FBI's criminal

investigation into allegations of public corruption in Cuyahoga County, Ohio.  The FBI has

determined that all information within the Evidentiary/Investigative category is exempt from

disclosure pursuant to FOIA Exemption 7(A).  Accordingly, the information readily meets the

threshold requirement of Exemption (b)(7).  *See Hardy Decl*. 2 at ¶ 38.

## 1.  Exemption 7(A)

FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for

law enforcement purposes [when disclosure] . . . could reasonably be expected to interfere with

enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  To justify the application of Exemption

7(A), the agency must demonstrate that (1) a law enforcement proceeding is pending or prospective; and (2) disclosure of the information could reasonably be expected to cause some articulable harm to the proceeding. *Voinche v. FBI*, 46 F.Supp.2d 26, 31 (D. D.C.1999); *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

To satisfy this burden, "[t]he FBI need not submit declarations that reveal the exact nature and purpose of its investigations." *Blackwell*, 680 F. Supp. 2d at 94-95. In fact, "Exemption 7(A) exists precisely to shield that sort of revelation." *Id*. Congress enacted Exemption 7(A) because it "recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases" in court. *John Doe Agency*, 493 U.S. at 156 (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224 (1978)). Accordingly, documents are exempt under Exemption 7(A) where disclosure "could reveal much about the focus and scope of the [agency's] investigation." *Swan v. S.E.C.*, 96 F.3d 498, 500 (D.C. Cir. 1996); *Mendoza v. DEA*, 465 F. Supp. 2d 5, 11 (D. D.C. 2006) ("Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation.").

On April 28, 2017, upon completion of the review of the responsive records, the FBI advised Plaintiff the specific material requested on subject Judge Donald Nugent is located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A). *See Hardy Decl*. 2 at ¶ 24. At this time, public disclosure of more detailed information on the application of exemptions would undermine the very interests the FBI seeks to protect through its assertion of Exemption (b)(7)(A). In addition, the tapes and transcripts are under court seal. *See Hardy Decl*. 2 at ¶ 38.

The FBI asserted FOIA exemption (b)(7)(A) to categorically deny information from

records because of on-going appeal proceedings. *See Hardy Decl*. 2 at ¶ 30-37. The FBI has

determined that some records pertaining to and/or referencing Plaintiff's FOIA subject are

exempt from disclosure pursuant to FOIA Exemption (b)(7)(A). *Id*. The FBI CVFO and RIDS

has concluded that all such law enforcement records relate to several enforcement proceedings

with outstanding appeals, and release of the information at this time could reasonably be

expected to interfere with the enforcement proceeding. *Id*.

Therefore, Exemption 7(A) was properly invoked by Defendants to withhold these

responsive records to Plaintiff's request.

## B. Defendants Properly Determined That Several Other FOIA Exemptions Apply.

### 1. FOIA Exemption 3

Exemption 3 of the FOIA provides that an agency need not disclose records that another

statute exempts from disclosure:

> [The FOIA does not require the release of information] [s]pecifically exempted
> from disclosure by statute (other than section 552b of this title), provided that
> such statute (A) requires that the matters be withheld from the public in such a
> manner as to leave no discretion on the issue, or (B) establishes particular
> criteria for withholding or refers to particular types of matters withheld.

5 U.S.C. §552(b)(3). If a court determines that a relevant statute exists and that the

withheld information is within the statute's coverage, the information cannot be

released. *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d

856, 868 n.29 (D.C. Cir. 1981) (court has no discretion to release information covered by a

qualifying statute, no matter how unwise or self-protective the statute may be); *Goland v.*

*C.I.A.*, 607 F.2d 339, 350 n.65 (D.C. Cir. 1978) (sole issue is the existence of a relevant

statute and the inclusion of information within the statute's coverage).

21

In this matter, FBI applied Exemption (b)(3) in conjunction with 18 U.S.C. §§ 2510-20. *Hardy Decl*. 2 ¶ 12.

### a.  18 U.S.C. §§ 2510-20

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510-2520), which provides the authority and limitations for law enforcement's obtaining and disclosing intercepted wiretap information 18 U.S.C. §§ 2510-20 Title III requires that "applications made and orders granted under this chapter shall be sealed by the judge." 18 U.S.C. § 2518(8)(b). Thus, the statute is designed to protect not only the actual communications obtained pursuant to its authority, but also the paperwork applying for and granting such authority, which would necessarily include the number designation of the request and the targets involved.  FBI has no discretion to disclose information that is under court seal, and Plaintiff has not established that this material has been subsequently unsealed by the Court.  *See Manchester v. PEA*. 823 F.Supp. 1259, 1267 (E.D. Penn. 1993) affirmed 40 F.3d 1240 (3rd Cir. 1994) (Wiretap applications and derivative information fall within the purview of Title III; disclosure is barred in FOIA proceeding).

Wiretap requests and the contents of any wire, oral, or electronic communication obtained through wiretaps falls under FOIA Exemption (b)(3) in conjunction with 18 U.S.C. §§ 2510-20.  *See Mendoza v. DEA*, No. 07-5006, 2007 U.S. App. LEXIS 22175 (D.C. Cir. Sept. 14, 2007) (per curiam); *Lam Lek Chong v. DEA*, 929 F.2d 729, 733 (D.C. Cir. 1991); *Payne v. DOJ*, No. 96-30840, slip op. at 5-6 (5th Cir. July 11, 1997).

Here, FBI applied 18 U.S.C. §§ 2510-20 in conjunction with Title III of the Omnibus Crime Control and Safe Streets Act to protect information specifically exempt pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III"), concerning the Court-ordered lawful interception and recording of telephone

22

communications and vocal communications recorded by electronic microphone surveillance by a federal law enforcement agency in criminal investigations. *See Hardy Decl*. 2 at ¶ 40. In this case, even the court sealing order is under seal. *Id*. As relevant to 5 U.S.C. § 552 (b)(3)(B), the Omnibus Crime Control and Safe Streets Act of 1968 is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009. *Id*.

The CVFO SA advised the FBI that the Title III wiretap recordings, and transcripts related to U.S. District Judge Donald Nugent are still under court seal. *See Hardy Decl*. 2 at ¶ 23 and 40. Finally, the CVFO SA advised even the sealing order is under seal. *Id*. To the extent that Plaintiff may assert that the material is not exempt because it is already in the public domain, he has failed to carry his legal burden. "[I]t is established that a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis*, 968 F.2d at 1279 (internal quotes omitted). Plaintiff has failed to make any assertions that the material is not exempt in his Complaint. Therefore, FBI has properly invoked Exemption 3 with 18 U.S.C. §§ 2510-20 in conjunction with Title III of the Omnibus Crime Control and Safe Streets Act in its withholding of the records located responsive to Plaintiff's request.

## C.  FOIA Exemption 6 and (b)(7)(C)

Exemption 6 permits the withholding of "personnel and medical files and similar files when the disclosure of such information 'would constitute a clearly unwarranted invasion of personal privacy.'" 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes, "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) (The Supreme Court has interpreted the phrase similar files to include all information that applies to a particular individual.) (internal

23

quotations omitted).

The Supreme Court has found that "[i]ncorporated in the 'clearly unwarranted' language is the requirement for ... [a] 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" *Lepelletier*, 164 F.3d at 46 (internal citation omitted).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[t]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original).  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989).  Further, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Under Exemption 7(C), the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations are protected from mandatory disclosure. *See Reporters Comm.*, 489 U.S. at 780. Indeed an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files, in such a way as to associate them with criminal activity. *Id*. The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

Due to the lack of privacy waiver or proof of death, EOUSA denied that portion of his request dealing with information about third parties, in this case Judge Donald Nugent and Paul Tomko, because they have a strong privacy interest in the records that may not be released absent their waiver and consent. *See Luczynski Decl. at ¶ 17.* Plaintiff has failed to establish an overriding public interest in disclosure of such records. *Id*. Information pertaining to the third parties at issue here, and release of any such information would place these third party individuals in a position to suffer undue invasion of privacy and harassment. *Id*. Consequently, Judge Donald Nugent and Paul Tomko's privacy interests in the requested law enforcement information outweigh the stated public interest in disclosure. *Id*. Therefore, release of any information about them could reasonably be expected to constitute a clearly unwarranted invasion of personal privacy. *Id*.

FBI determined all the responsive FD-302 records subject to FOIA were

categorically denied pursuant to FOIA Exemption 7(A), 6 and 7(C), because they relate to a

pending investigation.  *See Hardy Decl*. 2 at ¶ 26.  The FBI has carefully examined all

records responsive to Plaintiff's request for specific records concerning Judge Donald

Nugent as they relate to the FBI's criminal investigation into allegations of public corruption

in Cuyahoga County, Ohio.  *See Hardy Decl*. 2 at ¶ 38.  The FBI has determined that all

information within the Evidentiary/Investigative category is exempt from disclosure

pursuant to exemptions 6 and 7(C).  *Id.*

As relevant here, the FBI asserted FOIA exemptions (b)(6) and b7(C) in two fashions:  1)

to categorical deny the records, as they pertain to a third party whose privacy interest in the

records outweighs the public interest in disclosure; and 2) as an underlying exemptions to protect

third parties information of individuals mentioned in the records whose privacy interest also

outweighs the public interest in disclosure.  *See Hardy Decl*. 2 at ¶ 43-51.

Because the heighted privacy interests afforded by exemption 6 and 7(C) outweigh any

potential public interest, Defendants properly withheld documents, or portions of documents,

under FOIA Exemptions 6 and 7(C).

### D.  **FOIA Exemption 7(D)**

Exemption 7(D) permits the withholding of records "compiled by criminal law

enforcement authorit[ies] in the course of a criminal investigation" if producing the records

"could reasonably be expected to disclose the identity of a confidential source" or "information

furnished" by such a source.  5 U.S.C. § 552(b)(7)(D).  "Exemption 7(D) has long been

recognized as affording the most comprehensive protection of all FOIA's law enforcement

exemptions."  *Billington v. DOJ*, 301 F. Supp. 2d 15, 21 (D.D.C. 2004) (*citing Voinche v. FBI*,

940 F. Supp. 323, 331 (D. D.C. 1996)).  Courts that have examined section 7(D)'s exemption

emphasize that the exemption must remain "robust" to ensure that "confidential sources are not

lost because of retaliation against the sources for past disclosure or because of the sources' fear of future disclosure." *Barkett v. Dep't of Justice*, No. CIV. A. 86-2029 (SS), 1989 WL 930993, at *4 (D. D.C. July 18, 1989) (quoting *Brant Constr. Co. v. EPA,* 778 F.2d 1258, 1262 (7th Cir.1985)); *see Kele v. Dep't of Justice*, No. CIV.A.86-1795, 1988 WL 21705, at *3 (D. D.C. Feb. 29, 1988) ("The policy of 7(D) is to assure continued cooperation from confidential sources by eliminating the potential risk of embarrassment, harassment, and ridicule that exposure would entail.")

Significantly, Exemption 7(D) applies not only to information obviously identifying the source, such as name and address, but to all information that would tend to reveal the source's identity. *Pollard v. FBI*, 705 F.2d 1151, 1155 (9th Cir. 1983); *see Stone v. Defense Investigative Serv.,* 816 F. Supp. 782, 788 (D. D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"). The exemption's protections also extend to the "*information furnished by* a confidential source" to law enforcement authorities in the course of a criminal investigation. *See Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 48-49 (D. D.C. 2009) (emphasis added); *Albuquerque Pub. Co. v. Dep't of Justice*, 726 F. Supp. 851, 857 (D. D.C. 1989) (holding that Exemption 7(D) "obviously" applied to protect from disclosure "two tape recordings, which consist entirely of information obtained from a confidential, wired informant."); *Parker v. Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991) ("[O]nce the agency receives information from a 'confidential source' during the course of a legitimate criminal investigation *all* such information obtained from the confidential source receives protection.'") (emphasis in original). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, *Ortiz v. HHS*, 70 F.3d 729, 733 (2d Cir. 1995), and after the death of the source, *Campbell v. Dep't of Justice*, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

In determining the applicability of the exemption, "the question is . . . whether the particular source spoke with an understanding that the communication would remain confidential." *Dept. of Justice v. Landano*, 508 U.S. 165, 172 (1993); *see Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 26 (D. D.C. 2012) (the focus should always be on whether the *source* of the information spoke with the understanding of confidentiality, not whether the *document* is generally thought to be confidential)(emphasis in original).   Confidentiality exists, for the purpose of Exemption 7(D), when "the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 26 (D. D.C. 2012) *see Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011). If the production of criminal investigative records, like the Recording, "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by" such a source, that ends the matter, and the agency is entitled to withhold the records under Exemption 7(D).   *Parker*, 934 F.2d at 380.   Once an agency establishes confidentiality of a source, the FOIA requester faces a heavy burden in overcoming that promise.   To meet this burden, a requester must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"   *Parker*, 934 F.2d at 378 (quoting *Dow Jones & Co. v. Dep't of Justice*, 908 F.2d 1006, 1011 (D.C. Cir. 1990)).

Exemption (b)(7)(D), at times in conjunction with Exemptions (b)(6), and (b)(7)(C), have been asserted to protect the names, identifying information, and information provided by third party sources to the FBI under an implied assurance of confidentiality.  *See Hardy Decl*. 2 at ¶ 55.  These third party sources provided assistance and valuable and reliable information specific

in nature pertaining to the investigations of a multiple of individuals for public corruption in Cuyahoga County, Ohio. *Id*. The exempted information is detailed, and only known by a few individuals due to their proximity and/or direct or indirect association with investigative targets or targeted associates. *Id*. Disclosure of the identities of these individuals and the information provided could have disastrous consequences to them, or their families and associates. *Id*.

These third party sources provided information of value to the FBI, and in doing so, have placed themselves in harm's way should the public, and the individuals who were under investigation, become aware of their cooperation with the FBI. *See Hardy Decl*. 2 at ¶ 56. All of the individuals could reasonably fear that disclosure of their identities would place them in danger of possible retaliation, harassment, and/or could reasonably be expected to cause them physical harm. *Id*. It is for this reason these third party individuals would expect that their identities and the information they provided not be released to the general public. *Id*. It is reasonable to infer that each of the third parties that provided information to the FBI did so under circumstances from which an assurance of confidentiality may be implied. *Id*. Interviews conducted under such assurances of confidentiality warrant the protection of the interviewee's name as well as the information the interviewee provided, but only to the extent that the information would identify the interviewee. *Id*. If the interviewees' identities were released, it would likely subject them to harassment or reprisal. *Id*. The preservation of the confidentiality of these confidential sources, and the information provided is essential to effective law enforcement. *Id*. Disclosure could have a disastrous impact upon the ability to obtain this kind of information in the future, and would have a chilling effect upon the free flow of information essential to pursue and resolve criminal investigations. *Id*. The FBI is asserting Exemption 7(D), cited at times in conjunction with Exemptions 6 and 7(C), as an underlying exemption to

protect this type of information.  *Id*.

Accordingly, FBI properly withheld this information under exemption 7(D).

**E.  FOIA Exemption 7(E)**

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'"  *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Id*. (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

The FBI is asserting exemption (b)(7)(E) to protect information concerning surveillance operations in Cuyahoga County, Ohio; the targets of FBI pen registers/trap and trace devices; non-public information pertaining to FBI undercover operations; and internal e-mail addresses,

non-public intranet web addresses, and a secure internal e-mail tool. *See Hardy Decl.* 2 at ¶ 57-61.

Thus, FBI properly protected this information from disclosure pursuant to FOIA Exemption 7(E).

### F.  Section (j)(2) of the Privacy Act

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals ..." Under the regulations promulgated the Attorney General at 28 C.F.R. § 16.81(a)(1), the U.S. Attorney's Office criminal case files (known as Justice/USA-007 files) are exempt from the access provisions of the Privacy Act. See 5 U.S.C. § 552a(j)(2). Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.

EOUSA processes all requests by individuals for records pertaining to themselves under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by law. *See Luczynski Decl. at ¶ 10.*  Criminal case files maintained by U.S. Attorney's Offices are part of the DOJ Privacy Act System of Records. *Id.*  The Attorney General has promulgated regulations at 28 C.F.R. §16.81(a)(1) which exempt U.S. Attorney's Office criminal case files (known as Justice/USA-007 files) from the PA's access provisions, as authorized by 5 U.S.C. §552a(j)(2). *Id.*  Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws. *Id.*  Since Plaintiff's entire request pertains to criminal investigations, the materials were necessarily compiled for law enforcement purposes. *Id.*

Therefore, EOUSA determined that the responsive records withheld were not disclosable under the PA. *Id*.

Thus, EOUSA properly identified records as exempt under Privacy Act Exemption (j)(2) and correctly withheld the documents that were responsive to Plaintiff's request.

## VI. <u>DEFENDANTS PRODUCED ALL REASONABLY SEGREGABLE MATERIALS</u>

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. §552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Although the agency "must provide a 'detailed justification' for its non-segregability," it "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data*, 566 F.2d at 261). All that is required is that the government show "with reasonable specificity" why a document cannot be further segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir.1996) (internal citations omitted); *see Beltranena v. U.S. Dep't of State*, 821 F. Supp.2d 167 (2011) (upholding redactions under Exemption 3 where the declarant provides that the withheld information contained "no information that may be reasonably segregated and released, such as visa applications or other records that were previously in Plaintiff's possession."). Moreover, agencies are not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.

Here, EOUSA and FBI have declared that they each reviewed each record to identify information exempt from disclosure or for which a discretionary waiver of exemption could be

applied to ensure that all non-exempt information was released. However, all of the records responsive to Plaintiff's request were exempt from disclosure pursuant to the various FOIA exemptions specified above, and could not be reasonably segregated.

## **CONCLUSION**

For the foregoing reasons, Defendants, request entry of summary judgment on the claims in Defendants' favor.

Date: June 1, 2017

<div style="margin-left:40%">

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division


            /s/
_____

By:   TAMMY A. HOLLOWAY, MD Bar
Special Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2633 / (202) 252-2599 (Facsimile)
Tammy.Holloway2@usdoj.gov

</div>

33

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of June 2017, I served a true and correct copy of the foregoing *Defendants' Renewed Motion for Summary Judgment* upon Plaintiff by first class United States mail, marked for delivery to:

> ANTHONY L. VIOLA
> R32238-160
> McKean
> Federal Correctional Institution
> Inmate Mail/Parcels
> P.O. Box 8000
> Bradford, PA 16701
>
> *Pro se* Plaintiff

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division


_____/s/_____
TAMMY A. HOLLOWAY, MD Bar
Special Assistant United States
Attorney Civil Division
555 4th Street, N.W.
Washington, D.C.
20530
(202) 252-2633 / (202) 252-2599
(Facsimile) Tammy.Holloway2@usdoj.gov

*Counsels for Defendants*