# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ANTHONY L. VIOLA**, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 16-cv-1411 (TSC) |
| **UNITED STATES DEPARTMENT OF JUSTICE et al.**, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") lawsuit, *pro se* Plaintiff Anthony L. Viola seeks records relating to third parties from the Executive Office of the United States Attorney (EOUSA) and the FBI.[1] Defendant Department of Justice has withheld the records sought and now seeks summary judgment on Viola's claims. ECF No. 23. For the reasons set forth below, the court will GRANT the motion in part, and DENY the motion in part.

### I. BACKGROUND[2]

In 2011, an Ohio federal jury found Plaintiff guilty of conspiracy to commit mortgage fraud. *United States of America v. Lesniak, et al.,* 8-cr-506 (N.D. Ohio), ECF Nos. 54, 245. Although he continues to assert his innocence and apparently was acquitted of what he describes as "identical charges" in state court, Compl. ¶¶ 10-11, Plaintiff remains incarcerated despite numerous

---

[1] The EOUSA and the FBI are components of the United States Justice Department ("DOJ").

[2] FBI representative David M. Hardy submitted two declarations in support of the Defendants' summary judgment motion. The first declaration is located at ECF No. 23-2 pp. 62-72. The second is located at ECF No. 23-2 pp. 20-55. The court will refer to the Declarations as the Hardy Decl. and the Second Hardy Decl. respectively.

unsuccessful challenges to his conviction. *See e.g., Lesniak*, 8-cr-506 (N.D. Ohio), ECF No. 541. Several of those challenges involved claims that his criminal proceedings were tainted by prosecutorial misconduct and ineffective assistance of counsel. After sentencing, Plaintiff filed numerous motions and appeals (including voluminous exhibits) raising these claims. United States District Court Judge Donald Nugent—who presided over Plaintiff's federal criminal trial and sentenced him—held at least two day-long evidentiary hearings on the motions and issued numerous decisions denying post-conviction relief. *See id.*[3]

Plaintiff now theorizes that Judge Nugent turned a blind eye to the alleged misconduct and ineffective assistance of counsel in Plaintiff's case in order to protect himself from potential embarrassment and/or prosecution. Compl. ¶¶ 27-28. Viola supports this theory by pointing to proceedings in another Ohio federal criminal matter: *United States v. Calabrese*, in which the defendant was charged and convicted of conspiracy, bribery, extortion, and mail fraud after a three-year investigation into public corruption in Cuyahoga County, Ohio. 11-cr-437 (N.D. Ohio), ECF No. 104 pp. 1-2; ECF No. 119. Calabrese's case was randomly assigned to Judge Nugent, but the government successfully sought reassignment to Judge Sarah Lioi, who was handling other cases arising out of the same investigation. *Id.*, ECF No. 104. Calabrese twice sought to have the case reassigned, but argued that reassignment back to Judge Nugent was inappropriate because of his alleged connection to some of the individuals targeted during the investigation. *Id*.

Although she denied the motion to reassign, Judge Lioi found that there was no basis to disqualify Judge Nugent:

> The predicate for defendant Calabrese's motion is the apparent fact that brief telephone calls involving Judge Nugent [and some of the individuals targeted and/or charged in the Cuyahoga County investigation] were a part of the materials turned over by the government in discovery. The calls do not reveal any wrong doing or criminal activity

---

[3] As a result of Plaintiff's numerous post-trial motions and appeals, the District Court declared him a "vexatious litigator" and enjoined him from further filings associated with his sentence, unless he obtained permission from the Sixth Circuit. *Lesniak*, 8-cr-506, ECF No. 541.

2

> on the part of Judge Nugent, and there is an absence of any indication that Judge Nugent knew of or was a part of the charged conspiracy.

*Id*., ECF No. 58 p. 3. Subsequently, Calabrese's attorney received, from an "unknown source . . . a portion of an FBI Form 302[4] summarizing a[n]. . .interview between Judge Nugent and FBI agents" during which the "agents advised Nugent of the existence of the public corruption investigation." *Id*., ECF No. 104 pp. 4-5. Calabrese argued that Judge Nugent was disqualified because of the telephone calls and because the interview took place before his case was originally assigned to Nugent. *Id*. After reviewing Calebrese's supporting documents—many of which are sealed—Judge Lioi noted that "[t]he production of the FBI interview summary demonstrates that Judge Nugent was aware at the time of the [case] transfer of both the interception of the calls, and of the fact that he had been interviewed in connection with the FBI's investigation." *See id*.; *see also* ECF Nos. 55, 58, 102 at p. 6.

Plaintiff theorizes that the records and evidence from Calabrese's case could show that Judge Nugent had ulterior reasons for denying Plaintiff's post-trial motions. Compl. ¶¶ 27-28; Pls. Ex. H, Viola Aff. ¶ 8. This theory does not explain why the Sixth Circuit and the U.S. Supreme Court also denied Plaintiff's appeals, but Plaintiff nonetheless seeks, through FOIA, recordings and documents relating to Judge Nugent and the investigation.

Plaintiff also seeks records regarding Paul Tomko, an FBI "expert" and "informant," whom Plaintiff alleges reviewed key documents in Plaintiff's criminal case, Compl. ¶ 42, and who was later imprisoned for mortgage fraud. Compl. ¶ 43; *id*. at Ex. N.

---

[4] According to Hardy, a Form 302 (or FD-302) "Form for Reporting Information That May Become the Subject of Testimony" is "used to record the results of FBI interviews." Second Hardy Decl. ¶ 31.

3

## II. LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

FOIA cases are "typically and appropriately . . . decided on motions for summary judgment. *Gold Anti–Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.,* 762 F. Supp. 2d 123, 130 (D.D.C.2011) (citations omitted). Upon an agency's request for summary judgment in its favor on the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin,* 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted); *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1350 (D.C. Cir. 1983).

In cases concerning the adequacy of an agency's search, "[t]he burden is on the agency to demonstrate that it made a good faith effort to conduct a search using methods which can be reasonably expected to produce the information requested." *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (citations, quotations and alterations omitted). An agency may prove the reasonableness of its search through a declaration of a responsible agency official, so long as the

declaration reasonably details the documents and justifications for nondisclosure, and is not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). Although the agency is not required to search every record system, it must make a good faith effort to reasonably search systems that are likely to contain records where the requested information is likely to be found. *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). The agency declaration can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders v. Obama,* 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom., Sanders v. U.S. Dep't of Justice,* 10–5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citation omitted). Once an agency has provided adequate declarations, the burden shifts to the plaintiff to demonstrate that the agency failed to search in good faith, *id.*, but the presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. S.E.C.,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

### III.     ANALYSIS

**A. EOUSA**

Plaintiff sent the following request for records to the EOUSA:

   a) In 2012, the public became aware that U.S. District Judge Donald Nugent was recorded on wiretapped conversations with jailed political leaders James Dimora and Frank Russo.[5] This request is for those conversations, both oral recordings and transcripts available.

   b) Any documents that reference Judge Donald Nugent is [sic] being requested, including emails or notes from interviews with the Judge.

---

[5] James Dimora and Frank Russo are referenced in one of Viola's exhibits, a television station website article reporting on recorded conversations between the two men and Judge Nugent during the Cuyahoga County investigation. *See* Hardy Decl. ¶ 6, Ex. A.

5

    c) All documents concerning FBI informant Paul Tomko and all reports or documents provided by Mr. Tomko while he worked for the FBI and U.S. Attorney's Office in Cleveland.

ECF No. 23-2, Defs. Mot., Luczynski Decl. ¶ 4; *id*. at Ex. A.

1. EOUSA's Search and Final Determination Letter

The EOUSA advised Plaintiff in writing that it would not release records regarding third parties Dimora and Russo.[6] Luczynski Decl. at Ex. C. The EOUSA explained that it withheld the records pursuant to the Privacy Act, 5 U.S.C. § 552a, because Viola had not submitted: (1) consent from the third parties; (2) proof that they were deceased; or (3) evidence that the public interest in disclosure outweighed the third parties' privacy interests. *Id*. The EOUSA also explained it withheld the records because they were "generally exempt from disclosure" pursuant to two FOIA exemptions:

- (b)(6): "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy";

- (b)(7)(C): "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

*See id.*; 5 U.S.C. §§ 552(b)(6); 552(b)(7)C). The EOUSA stated that because Plaintiff failed to meet the requirements for "receiv[ing] information concerning individuals other than himself," EOUSA searched public records using the name "Anthony L. Viola and search terms provided by the requester in his FOIA request." Luczynski Decl. ¶ 7.

EOUSA Attorney Advisor David Luczynski is the agency representative responsible for responding to FOIA requests. Luczynski Decl. ¶ 1. Luczynski declares that each U.S. Attorney's Office "maintains the case files for criminal matters prosecuted by that office." *Id*. ¶ 7. Since

---

[6] There is no evidence in the record that Plaintiff objected to, or administratively appealed, the EOUSA's lack of response to his request for records regarding Nugent and Tomko. Moreover, the parties have not addressed the issue of administrative exhaustion as it relates to the EOUSA records.

Plaintiff's request related to the Northern District of Ohio, the EOUSA forwarded his request to that office, because "[t]here are no other records or systems or locations within the EOUSA in which . . . files pertaining to plaintiff's request were maintained." *Id*. ¶¶ 7, 9. The Northern District of Ohio office conducted "a systematic search" of the LIONS computer tracking system, which can retrieve "information based on an individual's name," the agency's internal administrative number, and the case number for any district court cases. *Id*. ¶ 7. Luczynski maintains that "[a]ll documents responsive to plaintiff's FOIA request [were] located" in the Ohio office Criminal Case File System (Justice/USA-007) and "all of the public records he requested [were] being released to him. *Id*. ¶¶ 6, 8; Luczynski Decl. at Ex. C.

2. Plaintiff's Challenge to the Search

Plaintiff disputes Luczynski's declaration that responsive files were confined to the Ohio U.S. Attorney's Office. He contends that the "government's" search[7] was inadequate because responsive files "may be located at the task force location" and therefore the "government" had a responsibility to "search the joint federal-state task force." Pls. Resp. pp. 1-2. Plaintiff claims there is uncontroverted evidence that the FBI and other federal agencies investigated and prosecuted his suspected mortgage fraud in conjunction with Ohio state law enforcement officials as part of the "Mortgage Fraud Task Force" ("MFTF"). Pls. Response p. 1 (citing 8-cr-506 (N.D. Ohio), ECF No. 400, March 22, 2011 Trial Tr. pp. 3493-95, 3498-99). He notes that during his criminal trial, when questioned about what law enforcement officials discovered while executing a search warrant, an FBI agent testified that after the search

> the evidence that's obtained, that was brought back to the Task Force location. And when the inventory of the search, that basically detailed that there was [sic] various

---

[7] Plaintiff did not separately address each agency's search, but the court interprets his arguments as relating to the EOUSA search because he challenges the EOUSA's assertion that all responsive records were located in the Northern District of Ohio office. *See* Pls. Resp. p 1. Out of an abundance of caution, however, the court will also address Plaintiff's arguments as they relate to the FBI search.

records, documentation taken for properties, and computers were seized from the
various businesses, and I believe from the residence, and those were brought over to
the Mortgage Fraud Task Force at that time.

*Lesniak, et al.*, 8-cr-506 (N.D. Ohio), ECF No. 400, March 22, 2011 Trial Tr. pp. 3498-99.

Plaintiff also points to a partially redacted FBI document as evidence that records were taken from the U.S. Attorney's office to the MFTF:

"FEDERAL BUREAU OF INVESTIGATION"

On April 6, 2010, at 3:35 pm, Special Agent _____ accepted a box of documents which were being held at the United States Attorneys' Office. The documents were originally provided by ____ to Special Agent ____ of Alcohol Tobacco and Firearms (ATF).

At 4:04 pm, SA _____ delivered these documents to Cuyahoga County Mortgage Fraud Task Force, for scanning and to be turned over for evidence.

On March 16, 2010, these documents were brought to a meeting held at the United States Attorney's Office. Present at the meeting were SA_____ and _____ of the ATF, SA ___ and Assistant United States Attorney ___. The documents were placed in storage at the conclusion of this meeting.

The documents turned over to the [Mortgage Fraud Task Force] included_____.

Investigation on 04/06/2010 at Cleveland, Ohio.

File # 329E-CV-71645-179

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency: it and its contents are not to be distributed outside your agency.

Pls. Resp. p. 1 (citing Ex. C).[8]

Plaintiff also maintains that MFTF records are missing or were mishandled. Pls. Resp. pp. 1-2, 4; *id.* Ex. H; Compl. at Ex. C. Relying on his own affidavit, Plaintiff asserts that Dawn Pasela, a "records and evidence custodian," "spy," and former "office manager" for the MFTF, told him

---

[8] Although Viola does not indicate the source of this document, the government did not dispute its authenticity.

"the United States Attorney's Office in Cleveland used the structure of the Task Force to shift evidence between locations and jurisdictions to hide exculpatory evidence from the defense." Pls. Ex. H, Viola Aff. ¶¶ 4, 6. "She also said the computers prosecutors claimed they 'lost' were in fact intentionally relabeled and destroyed." *Id.* ¶ 6. According to Plaintiff, Pasela befriended him before his federal trial, donated money to his defense, met with his attorney, and later admitted to him that she had worn a recording device provided by the MFTF to record their conversations. *Id.* ¶¶ 3-4. He claims she later provided him with exculpatory evidence that prosecutors allegedly withheld before trial, but that he was able to use to gain acquittal in his state trial. *Id.* ¶ 5; *see* Compl. ¶ 12(d). Plaintiff further alleges that Pasela offered to testify on his behalf in his state trial, but when prosecutors learned of this, they ordered her to leave town or face imprisonment. Compl. ¶ 12(d). He claims that Pasela told the state court judge that she would assert her Fifth Amendment rights if forced to testify, but died the following day. *Id.*

Plaintiff also submitted an affidavit from Pasela's father, who confirmed that the MFTF had used Pasela to obtain information about Plaintiff. Compl. at Ex. C, Pasela Aff. ¶¶ 5-6. Mr. Pasela also stated that his daughter indicated "things were being taken from the files and not returned," and that she appeared concerned that boxes of evidence relating to Plaintiff had been left in a hallway "which made them easily accessible to almost anyone." *Id.* ¶ 3.

3. <u>Plaintiff Has Not Overcome the Presumption Accorded the EOUSA Declaration</u>

The court finds that Plaintiff has not presented sufficient evidence to rebut the presumption of good faith accorded Luczynski's declaration regarding the search. First, Plaintiff's affidavits do not meet the standards imposed by Federal Rule of Civil Procedure 56: "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff's affidavits regarding allegedly

9

missing or mishandled evidence are not based on personal knowledge, but on what Pasela allegedly told her father and Plaintiff. *See, e.g.,* Compl. at Ex. C, Pasela Aff. ¶¶ 3, 4, 8 ("She told us. . .," "She also mentioned"); Pls. Ex. H, Viola Aff. ¶¶ 4, 6 ("She also said . . ."). Accordingly, the statements in the affidavits regarding MFTF evidence constitute inadmissible hearsay, not subject to an exception and are therefore inadequate to rebut the EOUSA declaration. *See Earle v. United States Dep't of Justice*, 217 F. Supp. 3d 117, 124 (D.D.C. 2016) (finding plaintiff had not overcome the presumption of good faith accorded agency affidavits where plaintiff submitted his own affidavit stating that an inmate acting as a "jailhouse" lawyer contradicted the agency's affidavit about records maintenance) (citing *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)). The affidavits also contain "purely speculative claims about the existence and discoverability of other documents" which do not undermine the EOUSA's assertions. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

Plaintiff's "evidence" that the EOUSA did not search responsive records that had been "turned over" to the MFTF is likewise insufficient to overcome the agency's declaration. Luczynski explained that each U.S. Attorney's Office maintains its own criminal files, searchable using the LIONS system, and there were "no other records systems or locations within EOUSA in which . . . files pertaining to [Viola's] request were maintained." Luczynski Decl. ¶ 7. Plaintiff presented no evidence that EOUSA failed to properly search its records. If, as Plaintiff asserts, the Northern District of Ohio office transferred records to the MFTF and did not retain copies in its LIONS system, EOUSA is correct that it is not required to search files that it does not maintain. *See Dipietro v. Exec. Office for U.S. Attorneys*, 357 F. Supp. 2d 177, 182 (D.D.C. 2004) (citing 5 U.S.C. § 552(f)(1)) (some citations omitted) ("No agency is obligated to produce records that it does not maintain."); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1363 (D.C. Cir. 1983) ("[E] if an

agency creates a document, FOIA requires disclosure only of records "for which agencies have chosen to retain possession or control.") (internal alterations omitted) (citing *Kissinger v. Reporters Committee,* 445 U.S. 136 (1980)).  And if, on the other hand, the Ohio office transferred records to the MFTF and retained copies in its LIONS system, then the records would have been located by the EOUSA search.  The EOUSA declarations therefore establish that it has satisfied its FOIA obligations.

Finally, Plaintiff's allegations of prosecutorial misconduct are insufficient to establish bad faith on the part of EOUSA.  *See Harvey v. U.S. Dep't of Justice*, 116 F.3d 484 (9th Cir. 1997) ("FOIA does not contain a 'forfeiture' provision. While an agency must engage in a good faith effort to conduct a search for the requested records and pass on whether they should be disclosed, Harvey's allegations of misconduct in the underlying criminal proceedings in no way support a finding of bad faith by the agencies in responding to Harvey's FOIA request.") .

**B.  FBI Search**

Plaintiff sent the FBI similar requests:

1) In 2012, the public became aware that U.S. District Judge Donald Nugent was recorded on wiretapped conversations with currently jailed political leaders James Dimora and Frank Russo.  This request is for those conversations, both oral recordings and transcripts available.

2) Any FBI 302 that references Judge Donald Nugent is [sic] being requested, including the agent's original notes from those interviews.

3) All FBI 302s - - and the agent's original notes - - from any and all interviews with "Paul Tomko" along with any reports by Mr. Tomko that were presented to the FBI or the U.S. Attorney's Office.

Hardy Decl. ¶ 6, Ex. A.

Like the EOUSA, the FBI advised Plaintiff that although he had requested information on third parties, he had not obtained permission from the third parties, nor had he produced proof of death or provided a public justification for disclosure that outweighed any privacy interests.  "In the

absence of such information," the FBI explained it could "neither confirm or deny the existence of any records responsive to [the] request." *Id*. at Ex. B. This type of reply is called a "*Glomar*" response. *Wonders v. McHugh*, No. 11-CV-1130 RLW, 2012 WL 3962750, at *3 (D.D.C. Sept. 11, 2012) (citing *Electronic Privacy Information Center v. National Sec. Agency,* 678 F.3d 926, 931 (D.C. Cir. 2012)). An agency responds in this manner when "actually admitting or denying the existence of the requested documents would disclose the exempt information" and therefore the agency refuses to confirm the existence or non-existence of responsive records. *Wonders*, 2012 WL 3962750, at *3.

Plaintiff responded to the FBI, arguing that public interest in the information outweighed any privacy concerns because: 1) the third parties were public officials; (2) the tapes purportedly established misconduct in his criminal case; and (3) the substance of the tapes might reveal that Judge Nugent had been involved in criminal activity and should be investigated. *See* Hardy Decl. at Ex. C. Plaintiff also challenged the agency's *Glomar* response, arguing that an online article he had previously submitted showed that tapes' existence had become public. *Id*.

Rejecting his arguments, the FBI affirmed its *Glomar* response and advised Plaintiff of his right to appeal within sixty days. Hardy Decl. at Ex. D. Plaintiff administratively appealed "the denial of my FOIA request for tapes . . . that captured the voice of a sitting federal Judge, Donald Nugent." Hardy Decl. at Ex. E. He also enclosed a copy of the FBI's denial letter, but did not mention Tomko or the Nugent Form 302s. *Id.* The FBI denied the appeal, noting that the appeal concerned "only that aspect of [the] request seeking records on U.S. District Judge Donald Nugent." Hardy Decl. at Ex. G.

Several months later, Plaintiff filed this lawsuit seeking disclosure of the requested records on both Nugent and Tomko. The FBI filed a Motion for Summary Judgment, reiterating its *Glomar* response. ECF No. 15. In his opposition, Plaintiff argued that the agency's *Glomar* response was

improper, citing to the Calabrese case as evidence that the existence of the tapes had become public. ECF No. 18.

After receiving Plaintiff's response, the FBI reviewed the Calabrese case and withdrew their motion for summary judgment. ECF No. 22; Second Hardy Decl. ¶¶ 6-12. The FBI then sent Plaintiff a second letter informing him that it would not disclose the requested records because: 1) they were located in an investigative file and therefore exempt from disclosure; 2) they contained information subject to privacy-based exemptions; and 3) the tape recordings and transcripts had been sealed by the Ohio federal court. Second Hardy Decl. ¶ 13; *id*. at Ex. A.

Defendant subsequently filed a second summary judgment motion, including a Statement of Material Facts not in Dispute, to which it attached several declarations and accompanying exhibits. ECF No. 23. Plaintiff filed a response to that motion, along with two supplemental briefs and documents, ECF Nos. 25, 28, 30, but did not respond to Defendant's Statement of Material Facts and some of its arguments.

1. <u>Exhaustion of Administrative Remedies: Tomko</u>

Although it is clear Plaintiff exhausted his administrative remedies with regard to his FBI request for records on Judge Nugent, it is unclear whether he exhausted his remedies with respect to his request for records about Tomko. On December 22, 2017, even though Plaintiff had requested records on both Judge Nugent and Tomko, the FBI's *Glomar* response stated: "Subject: Nugent, Donald." Hardy Decl. at Ex. B. Plaintiff's subsequent challenge to the *Glomar* response did not mention Tomko:

> Re:    FOIA Request No. 1340983: Federal Judge Donald Nugent. . . .
>
> Kindly note that my request for information and taped conversations between U.S. District Judge Donald Nugent and Frank Russo and James Dimora should be released because the public interest outweighs personal privacy interests . . . .

Hardy Decl. at Ex. C.

In response, the FBI sent its initial "final" determination letter (regarding "Subject: Nugent, Donald") advising Plaintiff of his administrative appeal rights. *Id*. at Ex. D. Plaintiff filed a timely appeal, but again did not mention Tomko. *See* Hardy Decl. at Ex. E. In May 2016, the FBI denied the appeal, noting that it "concern[ed] only that aspect of your request seeking records on U.S. District Judge Donald Nugent," Hardy Decl. at Ex. G, and Plaintiff filed this lawsuit the following July. Thus, the record indicates that the FBI informed Plaintiff that its response was limited to the records relating to Judge Nugent, Plaintiff's appeal was confined to his request for records on Judge Nugent, and there is no evidence that Plaintiff exhausted his administrative remedies regarding his request for Tomko records before he filed this lawsuit.

Once Plaintiff brought this lawsuit and the FBI withdrew its *Glomar* response and withheld the records on other grounds, its response to Plaintiff again stated: "Subject: Nugent, Donald." Hardy Decl. at Ex. A. Plaintiff's appeal this time noted: "There is no 'ongoing investigation' in the matter of Paul Tomko or Judge Donald Nugent. . . ." Pls. Resp. at Ex. I. May 1, 2017 letter. The FBI responded in a letter, referencing Plaintiff's "request for access to records concerning Donald Nugent," and advised Plaintiff that it was closing his file because it does not normally act on an appeal where the request has become the subject of litigation. Pls. Resp. at Ex. I, May 27, 2017 letter.

A few days later, the FBI filed its currently pending motion for summary judgment, in which it contends that Plaintiff failed to exhaust his administrative remedies with respect to Tomko. ECF No. 23. Plaintiff responded by filing "Exhibit I," as "confirmation that those documents were sought in all appeals in this case." Pls. Br. p. 4. The Exhibit contained a copy of the appeal letter naming Tomko, as well as the FBI's response. *Id*. at Ex. I, May 1, 2017 letter. The Exhibit also included a letter indicating Plaintiff had sent the FBI a second FOIA request seeking records on Tomko shortly before filing his second summary judgment response. *Id.*, June 13, 2017 letter.

14

Plaintiff later supplemented the record by filing a copy of an administrative appeal related to the second Tomko FOIA request and a denial of the appeal. ECF Nos. 28, 30.

Defendant filed its reply brief in support of the pending motion for summary judgment, but did not respond to Viola's exhaustion arguments or address the evidence he proffered. In the absence of any argument from Defendant regarding the significance—if any—of Plaintiff's administrative appeal of the FBI's second determination letter during litigation, as well as the significance of the second FOIA request and appeal, this court finds that Defendant has not shown that Plaintiff failed to exhaust his administrative remedies with regard to his request for documents relating to Tomko.

2. Withheld Records[9]

Because of Privacy Act restrictions and because the requested documents include law enforcement files associated with ongoing litigation, the FBI withheld responsive records pursuant to FOIA Exemptions 6, 7(A), 7(C), 7(D) and 7(E). Second Hard Decl. ¶¶ 26, 28-29, 30, 32-33. It also withheld the tapes and transcripts pursuant to Exemption 3. *Id*. ¶ 26.

Under to Exemption 7, FOIA "does not apply" to "records or information compiled for law enforcement purposes" if they fall into one of six enumerated categories. 5 U.S.C. § 552(b)(7). The FBI found records relating to Judge Nugent in its file pertaining to the Cuyahoga County corruption investigation. Second Hardy Decl. ¶ 22. Because there were several pending appeals in those cases at the time, the FBI refused to disclose the Form 302s pursuant to Exemption 7(A),

---

[9] As discussed above, Plaintiff did not specifically challenge the sufficiency of the FBI's search, but instead challenged Luczynski's statement that all EOUSA responsive records were located in its Ohio office. *See* Pls. Resp. p. 1. Even if Plaintiff had challenged the FBI search, none of his arguments regarding the "missing" MFTF evidence would have been relevant to the FBI search for records on Judge Nugent because the FBI interviewed Judge Nugent during a separate investigation of Cuyahoga County corruption; there is no allegation that Nugent is tied to the MFTF investigation. However, the MFTF records would have been relevant to a search for records on Tomko.

which allows an agency to withhold law enforcement records where disclosure "could reasonably be expected to interfere with enforcement proceedings." Second Hardy Decl. ¶¶ 23, 26, 28-29-37; 5 U.S.C. § 552(b)(7)(A).

The records also contained the names and/or other identifying information of: 1) FBI agents and other FBI support personnel; 2) state and local government employees; and 3) third-parties who were of investigative interest, provided information to law enforcement agencies and/or were simply mentioned in the course of the investigation. Second Hardy Decl. ¶¶ 44-51. In light of this information, the FBI also refused to disclose the records pursuant to privacy related exemptions, which allow the agency to withhold:

> "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" (Exemption 6); and

> "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy" (Exemption 7(C)).

5 U.S.C. §§ 552(b)(6); 552(7)(C).

The FBI also withheld responsive documents pursuant to Exemption 7(D) because they contained law enforcement records that "could reasonably be expected to disclose the identity of a confidential source." Second Hardy Decl. ¶¶ 52-56 (citing 5 U.S.C. § 5532(b)(7)D)). Records were additionally withheld pursuant to Exemption 7(E), which applies to records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Second Hardy Decl. ¶¶ 57-61 (citing 5 U.S.C. § 552(b)(7)(E)). Hardy declared that Exemption 7(E) applied because the records contained information concerning installation and location of monitoring devices, as well as the types of devices the FBI uses; targets of pen registers/trap and trace devices; undercover operations; and

internal FBI email and IP addresses. Second Hardy Decl. ¶¶ 55- 61. Hardy also stated that the "FBI conducted a line by line review of the responsive records . . . and failed to identify any information that could reasonably be segregated for release without posing any harm to the asserted FOIA" exemptions. *Id*. ¶¶ 63.

Finally, the FBI withheld the recordings and transcripts of Judge Nugent for two reasons: First, under Exemption 3, which allows agencies to withhold records "specifically exempted from disclosure by statute . . . .," because the tape recordings and transcripts are protected pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, concerning lawful interception and recording of electronic communications. Second Hardy Decl. ¶¶ 39-41. Second, because the recordings and transcripts were sealed pursuant to a court order, which was itself sealed. *Id*. ¶¶ 38-41.

Plaintiff did not respond to the FBI's exemption arguments, nor did he respond to its Statement of Facts. However, he asserts that the tapes were "widely" disseminated during discovery in the Cuyahoga County proceedings, were played in open court, and the government did not seek a protective order. Pls. Resp. pp. 2-3.

Construing Plaintiff's assertions as a challenge to the exemptions, the court finds his argument unavailing. Plaintiff has proffered no evidence that the recordings were played in court or were disclosed without a protective order. Indeed, the court takes judicial notice of the docket in the Calabrese case, which contains several motions and orders—some of which are sealed— involving protective orders. *See United States v. Calabrese*, 11-cr-437 (N.D. Ohio), ECF Nos. 31, 38, 46. Plaintiff's unsupported allegations are therefore insufficient to overcome Hardy's declaration that the tape recordings and transcripts are sealed pursuant to a court order.

17

In sum, Plaintiff has offered no arguments or evidence that the FBI violated FOIA in withholding the responsive records and the court will therefore grant Defendant's motion for summary judgment on this issue.

C. **<u>Appointment of Counsel</u>**

In his reply to Defendant's second motion to for summary judgment, Viola asks this court to appoint him counsel. *See* Pls. Resp. p. 5. A plaintiff in a civil case does not have an absolute constitutional or statutory right to court-appointed counsel. *See Ray v. Robinson,* 640 F.2d 474, 477 (3d Cir.1981). In this district, appointment of counsel from the Civil Pro Bono Panel is available to *pro se* plaintiffs who are proceeding *in forma pauperis*. *See* LCvR 83.11(b)(3). Viola is not proceeding *in forma pauperis* and has not demonstrated that he qualifies for this status.

Moreover, even if he did qualify for *in forma pauperis* status, a decision on whether to appoint counsel "must take into account, among other things, the nature and complexity of the action, the potential merit of the *pro se* party's claims, the demonstrated inability of the *pro se* party to retain counsel by other means, and the degree to which the interests of justice will be served by appointment of counsel." *Plummer v. D.C.,* No. CIV.A.07-1161 RMU, 2008 WL 3972183, at *2 (D.D.C. Aug. 27, 2008); LCvR 83.11(b)(3). Plaintiff has not established that there is any potential merit to his claims. Instead, he has barely survived summary judgment on a single issue, which the Defendant failed to address in its reply brief, and which, even if resolved in his favor, may not lead to disclosure of the records he seeks. Plaintiff also has failed to demonstrate that he is unable to retain counsel by other means. Accordingly, the interests of justice would not be served by appointing counsel in this action, and his request will be denied.

IV. **CONCLUSION**

For the reasons set forth above, the court will GRANT Defendant's motion for summary

18

judgment except with respect to the Tomko exhaustion issue.


Date:  March 31, 2018

                            *Tanya S. Chutkan*
                            TANYA S. CHUTKAN
                            United States District Judge