UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY L. VIOLA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 16-cv-1411 (TSC) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | ) |
| Defendants. | ) |

### MEMORANDUM OPINION ON MOTION TO RECONSIDER [1]

*Pro se* Plaintiff Anthony L. Viola seeks reconsideration of the court's ruling granting in part and denying in part Defendant's Motion for Summary Judgment. *See Viola v. U.S. Dep't of Justice*, 306 F. Supp. 3d 321 (D.D.C. 2018). For the reasons set forth below, the court will **DENY** Viola's motion in part and **GRANT** the motion in part.

### I. LEGAL STANDARD

A court may grant a motion to reconsider a non-final order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "The standard for determining whether or not to grant a motion to reconsider brought under Rule

---

[1] On March 31, 2019, this court issued an Order, ECF No. 41, granting the Plaintiff's Motion to Reconsider in part and denying the motion in part. ECF No. 35. This Memorandum Opinion explains the court's reasons for that Order.

54(b) is the 'as justice requires' standard. . ., which requires 'determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances.'" *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (citations omitted). Applying this standard, courts may consider

> whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred. Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider: "In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration."

*Id.* at 75–76 (citations omitted).

## II. ANALYSIS

### A. ADEQUACY OF THE EOUSA'S SEARCH

Viola filed this lawsuit against the Executive Office of the United States Attorney (EOUSA) and the FBI,[2] pursuant to the Freedom of Information Act (FOIA), seeking records relating to third parties who were prosecuted for public corruption in Cuyahoga County, Ohio. *Viola*, 306 F. Supp. 3d at 324-26  Because the third parties had not consented to disclosure, the EOUSA refused to release the records to Viola, but instead searched for and released records relating to Viola. *Id.* at 326. Viola challenged the adequacy of the EOUSA's search, arguing that it had failed to search certain records maintained by a joint state and federal mortgage fraud task force ("MFTF"), which he claimed had documents relating to his 2011 prosecution for mortgage fraud. *Id.* at 327–28.

---

[2]  The EOUSA and the FBI are components of the United States Justice Department ("DOJ").

The EOUSA asserted that the MFTF was an entity "completely separate and apart from the Defendants" and EOUSA had no duty to search files maintained by other entities. ECF No. 31, Defs. Summ. J. Reply p. 2. In granting summary judgment for the EOUSA on the adequacy of its search, this court found that Viola had not overcome the presumption of good faith accorded the declaration of EOUSA Attorney Advisor David Luczynski that Viola's request was sent to the U.S. Attorney's Office for the Northern District of Ohio, which prosecuted Viola. *Viola*, 306 F. Supp. 3d at 326–27.[3] Luczynski stated that

> "there are no other records or systems or locations within the EOUSA in which files pertaining to plaintiff's request were maintained." The Northern District of Ohio office conducted "a systematic search" of the LIONS computer tracking system, which can retrieve "information based on an individual's name," the agency's internal administrative number, and the case number for any district court cases.

*Id.* at 327 (citations to the record omitted). He further maintained that "'all documents responsive to plaintiff's FOIA request were located' in the Ohio office Criminal Case File System (Justice/USA–007) and 'all of the public records he requested were being released to him.'" *Id.* (alterations omitted). In light of this evidence, this court held that the EOUSA had met its obligation under FOIA, and that EOUSA was not obligated to search files that it did not maintain. *See Viola*, 306 F. Supp. 3d at 328–29.

Viola asks the court to reconsider this decision, arguing that he has asserted throughout this litigation that the MFTF is a "federal agency for purposes of the FOIA statute." ECF No. 35, Mot. to Reconsider p. 1. He further argues that the federal government never refuted that argument, thereby conceding the point.

---

[3] When the court quotes its earlier opinion in this case, *Viola*, 306 F. Supp. 3d 321, it will omit citations to the record found in the opinion.

The court is unable to identify this argument in Viola's briefs on the motion for summary judgment. Instead, Viola argued that the government

> cannot limit its search to only one record system if there are others that are likely to turn up the information requested . . . . The government was required to search the joint federal-state task force for responsive records because it is well settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search.

ECF No. 25, Pls. Summ. J. Opp'n at pp. 1–2 (citation and quotations omitted). Viola's argument in opposition to the summary judgment motion did not proffer the theory that the task force constituted a federal agency for purposes of FOIA. Because Viola did not raise the argument, the government could not have disputed it or conceded it. On the other hand, courts must interpret *pro se* pleadings liberally. Doing so here, one could argue that Viola may have intended to convey such an argument but failed to properly articulate it, and thus, "justice requires" that the court consider Viola's argument. *See In Def. of Animals*, 543 F. Supp. 2d at 75.

Under FOIA, an "agency . . . includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1). Viola argues that the MFTF falls within FOIA's definition of an agency because an FBI Agent exercised "extensive and virtually day-to-day supervision" of the MFTF, which included "dozens" of federal employees from the FBI, Postal Inspector's Office and the United States Attorney's office. Mot. to Reconsider p. 2. He also argues that the task force was an agency because it was federally funded and issued federal search warrants, under which evidence was obtained and brought to the task force location. *Id.* pp. 1–2.

Viola's evidence, however, contradicts his argument. Viola submitted an affidavit from Arvin Clar, of the Ohio Bureau of Criminal Investigations, who was at various times Director and Assistant Director of the MFTF, and who also participated in the investigation of Viola's fraud charges. ECF No. 40, Pls. Mot. for Reconsideration Reply, Ex. B, Clar Aff. ¶ 2. Clar explained that certain "cooperating" federal entities shared information with the MFTF, but they were not "signatory participating members" to the Memorandum of Understanding ("MOU") establishing the task force. *Id.* ¶¶ 3–5.[4] While the county prosecutor secured federal grant money to hire employee investigators for the county prosecutor's office, the state of Ohio "exclusively" provided funding for the MFTF; no federal agencies provided funding. *Id.* ¶¶ 7, 9–11, 13.[5] Furthermore, the MFTF "possessed its own secured evidence room or location under the supervision of the Task Force director for the purpose of securing and maintaining" evidence, and no federal agency "had any right of authority or control over the activities of" the task force. *Id.* ¶¶ 6, 10. Given this evidence, the court finds that Viola has not established that the MFTF was an agency for purposes of FOIA.[6]

In his motion to reconsider, Viola cites cases that—although factually distinguishable—describe circumstances under which disclosure may be required even where records are held by a

---

[4] Clar's Affidavit indicates a copy of the MOU is attached as an exhibit, but Viola did not provide a copy of the MOU. Clar Aff. ¶ 3.

[5] This statement regarding the source of funding is consistent with the testimony given during Viola's trial by FBI Agent Jeff Kassouf. *United States of America v. Lesniak,* 8-cr-506 (N.D. Ohio), ECF No. 44, Tr. p. 3493.

[6] In addition to the Clar Affidavit, Viola cites deposition testimony from his trial to support his argument that the MFTF was federally controlled. Like the Clar transcript, however, the deposition testimony does not help Viola. *See* Pls. Mot. to Reconsider pp. 1–2; *see United States v. Lesniak,* 8-cr-506 (N.D. Ohio), ECF No. 400, Tr. pp. 3492–99, 3675–78; ECF No. 321, Tr. p. 33 (explaining that federal entities had access to the MFTF evidence, but once secured it was taken to the MFTF office).

non-agency. In *Forsham v. Harris*, 445 U.S. 169, 181 (1980), the Supreme Court explained that "records of a nonagency certainly could become records of an agency." In *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 917 (N.D. Cal. 1998), the court explained:

> Two requirements must be satisfied for materials to qualify as "agency records." *United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144 (1989) ("*Tax Analysts I*"). First, an agency must either create or obtain the materials. *Id.* Second, the agency must be in control of the requested materials at the time the FOIA request is made. *Id.* at 145. "By control we mean that the materials must have come into the agency's possession in the legitimate conduct of its official duties." *Id.* . . . . The relevant issue is whether a FOIA agency has created or obtained the material sought, not whether the organization from which the documents originated is itself covered by the FOIA. *Id.* at 146.

When determining "whether an agency exercises sufficient control over requested documents to render them agency records," the Circuit has "employed a four-factor analysis," which involves considering:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004) (citation omitted); *see Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) (noting that the court's totality of the circumstances test seeks to vindicate Congress' purpose "to open agency action to the light of public scrutiny"). "The burden is on the agency to demonstrate that the materials sought are not agency records or have not been improperly withheld. Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it." *Gilmore*, 4 F. Supp. 2d at 917 (citing *Tax Analysts*, 492 U.S. at 142 n.3).

The government's response to Viola's motion to reconsider was unsatisfactory. First, the government did not cite any legal authority or documentary evidence, nor did it provide a substantive

response, but instead simply maintained that Viola's position is "unsubstantiated," "irrelevant," and unsupported by his cited cases. ECF No. 38, Defs. Mot. to Reconsider Opp. p. 3. Despite the government's inadequate response, the court is persuaded by the testimony of Viola's declarant, Agent Clar, that the MFTF records are not subject to control by the EOUSA or any other federal entity. While federal agencies subject to FOIA may have been able to access and review the records, Clar's statement provides no evidence that the federal government or the Ohio Bureau of investigation intended or permitted federal entities to control MFTF records. Likewise, there is no evidence that federal entities actually controlled the records or had the ability to dispose of the records as they saw fit. *See Gilmore*, 4 F. Supp. 2d at 917 ("The FOIA applies only to records that have in fact been obtained, and not to records that merely could have been obtained, by the agency.") (citing *Tax Analysts*, 492 U.S. at 146). Thus, to obtain records from the MFTF, Viola must seek relief through a state FOIA mechanism, to the extent one is available in Ohio.

**B. FBI: FOIA EXEMPTIONS**

Viola also sent the FBI requests seeking documents relating to third parties:

1) "In 2012, the public became aware that U.S. District Judge Donald Nugent was recorded on wiretapped conversations with currently jailed political leaders James Dimora and Frank Russo. This request is for those conversations, both oral recordings and transcripts available"; and

2) "Any FBI 302 that references Judge Donald Nugent is [sic] being requested, including the agent's original notes from those interviews."[7]

*Viola*, 306 F. Supp. 3d at 329 (citations to the record omitted). The FBI withheld the requested records because they: 1) contained information subject to privacy-based FOIA exemptions; 2)

---

[7] Plaintiff also requested records on Paul Tomko, but that request is the not subject of the motion to reconsider.

contained information regarding confidential sources; 3) contained information that reveals law enforcement investigative techniques; 4) contained information concerning the types of surveillance devices the government uses, as well as how they are used; 5) contained information about the types of undercover operations the government uses; 6) contained internal FBI email and IP address information; and 7) were protected from disclosure by FOIA exemption 3 and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, concerning lawful interception and recording of electronic communication. *Viola*, 306 F. Supp. 3d at 332–33.

The FBI also withheld records pursuant to FOIA exemption 7 because they included law enforcement files associated with ongoing litigation. *Id.* at 332. Finally, the FBI withheld some records because they were subject to judicially sealed protective orders. *Id.* at 333.

Viola did not specifically respond to the FBI's exemption arguments, nor did he respond to its Statement of Undisputed Facts during summary judgment briefing. Instead, his response was confined to the issue of the tape recordings and transcripts, arguing that the government could not withhold them because they had been "widely" disseminated during discovery in the Cuyahoga County corruption proceedings, and the government did not seek a protective order. *Id*.

Finding that Viola proffered no evidence that the recordings were played in court or were disclosed without a protective order, this court rejected his argument. *Id.* The court took judicial notice of the docket in the only Cuyahoga County corruption case Viola cited in his briefs, *United States v. Calabrese*, 11-cr-437 (N.D. Ohio). That docket contains a motion seeking leave to file a motion under seal because it is related to discovery disclosures of sealed documents. *See id.*, ECF No. 27. The order granting the motion is sealed from public review, *id.* ECF No. 29, as well as several additional protective orders and related motions. *Id.*, ECF Nos. 31, 38, 46. Accordingly, the

court found that Viola's unsupported allegations were insufficient to overcome the agency declarant's statement that the tape recordings and transcripts were sealed pursuant to a court order. *Viola*, 306 F. Supp. 3d at 333.

In his motion to reconsider, Viola asserts that the tapes and transcripts have been disclosed to the public and therefore cannot be withheld. He also asserts that there are no ongoing appeals in the Cuyahoga County corruption case and therefore the FBI cannot rely on FOIA exemption 7 to withhold any of the requested records.

1. <u>Tape Recordings and Transcripts</u>

With respect to the tapes and transcripts, Plaintiff rehashes his summary judgment argument that they are not sealed because they were "widely" disseminated during discovery in the Cuyahoga County corruption proceedings, and the government did not seek a protective order. Pls. Summ. J. Opp'n pp. 2–3. In opposition to the summary judgment motion, Viola cited his own affidavit in which he alleged that he is "in jail with Mike Forlani and he said he listened to the tapes that concern Judge Nugent since they were provided to his attorney as part of discovery." Pls. Summ. J. Opp'n, Ex. H, Viola Aff. ¶ 9. In his motion to reconsider, Viola adds that Forlani was a co-defendant in the Cuyahoga County corruption case and he does not recall any prohibition on his dissemination of the information he heard when listening to the tapes. Pls. Mot. to Reconsider pp. 3–4.

"It is well settled that 'materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record.'" *Pike v. U.S. Dep't of Justice*, 306 F. Supp. 3d 400, 410 (D.D.C. 2016), *aff'd*, No. 16-5303, 2017 WL 2859559 (D.C. Cir. June 23, 2017) (citing *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)). However, Viola's "evidence" is not enough to create a genuine issue of material fact with respect to public

dissemination. Viola's statements are not based on first-hand knowledge of whether the tapes were disclosed during discovery without a protective order. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

It is somewhat perplexing that Viola was able to secure an affidavit from an Ohio public official to support his motion to reconsider, but did not obtain one from an inmate with whom he is housed in prison. While Viola asserts that Forlani is willing to testify regarding disclosure of the tapes and transcripts, *see* Pls. Mot. to Reconsider p. 4, such testimony still would be insufficient to meet Viola's burden.

In *Owens v. U.S. Department of Justice*, No. CIV. A. 04-1701 (JDB), 2007 WL 778980 at *1 (D.D.C. Mar. 9, 2007), Plaintiffs unsuccessfully made a similar argument in response to the government's withholding of records that were compiled during investigation of certain terrorist attacks and later used to prosecute the perpetrators. Because some of those materials were disclosed during the prosecution, plaintiffs argued that "much of the information being withheld ha[d] already been . . . disclosed to counsel for the criminal defendants," and therefore could not be withheld pursuant to FOIA. *Id.* at *6.

Rejecting that argument, the court explained that plaintiffs could not "defeat defendants' exemption claims simply by pointing to a judicial proceeding in which some of the responsive documents may or could have been released." *Id.* at *5. Because plaintiffs bore the "burden of demonstrating disclosure," they had to point to "specific information in the public domain that appear[ed] to duplicate that being withheld.'" *Id.* (citing *Cottone*, 193 F.3d at 554 (citation omitted).

Moreover, "the specific information sought must have been 'disclosed and preserved in a permanent public record.'" *Owens*, 2007 WL 778980, at *5 (citing *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001)). Applying those standards, the court found that plaintiffs' allegations were "nothing more than speculation. Absent from the record, for instance, [were] copies of any documents disclosed during the earlier criminal case, affidavits or testimony from defense counsel in that case, or other sources of evidence that could meet the level of specificity required by the D.C. Circuit." *Owens*, 2007 WL 778980, at *6 (citing *Cottone*, 193 F.3d at 554; *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992)).

As in *Owens,* Viola's proffered evidence also fails. Viola cannot point to a judicial proceeding where the tapes and/or transcripts were disclosed without a protective order; he merely speculates there was no protective order—despite evidence from the *United States v Calabrese*, 11-cr-437 (N.D. Ohio) docket to the contrary. *See Viola*, 306 F. Supp. 3d at 333. Moreover, Forlani's inability to recall whether he was permitted to disclose information he heard on the tapes does not establish that the tapes were indeed disclosed without a protective order. Forlani's recollections do not constitute a "source[] of evidence that could meet the level of specificity required by the D.C. Circuit." *See Owens*, 2007 WL 778980, at *6 (citing *Cottone*, 193 F.3d at 554; *Davis*, 968 F.2d at 1280). Accordingly, the court will deny Viola's motion with respect to the FBI's withholding of the tapes and transcripts.[8]

---

[8] The FBI also withheld the tapes and transcripts pursuant to exemption 3 and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, concerning lawful interception and recording of electronic communication. *Viola*, 306 F. Supp. 3d at 332–33. Viola did not challenge this ground for withholding in his summary judgment opposition or in his motion to reconsider.

2. Exemptions

The FBI refused to release "some records" pursuant to exemption 7(A), which allows an agency to withhold law enforcement records where disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); ECF No. 23-2, Second Hardy Decl. ¶ 30.[9] In his declaration, FBI representative David M. Hardy asserted that, as of March 10, 2017, several of the Cuyahoga County corruption case defendants had appeals pending. Second Hardy Decl. ¶¶ 30, 33. Viola challenges the FBI's reliance on exemption 7, and implies that the court disregarded his allegation that there were no "ongoing investigations" in favor of the government's position. Mot. to Reconsider p. 3.

Although Viola argued (without proffering any evidence) in a May 1, 2017 letter to the FBI that there were no ongoing appeals, he did not raise this argument in his summary judgment opposition or supplemental court filings. *See* Pls. Summ. J. Opp'n; Pls. Summ. J. Opp'n Ex. I. Thus, there was no indication that he sought to pursue that issue before this court.

In his July 5, 2018 motion to reconsider, however, Viola asserts, for the first time, that "[a] check of the law computer at [his] prison confirms that there are no pending 'appeals' by any defendant involved in the Cuyahoga County corruption cases. These cases—from 2009-2012—have had all appeals decided. In fact, the statute of limitations has long passed in these cases." Pls. Mot. to Reconsider p. 3.

The FBI did not directly address Viola's argument. Instead, it simply noted that Viola offered no evidence to support his assertion and, even if exemption 7 is not applicable, the other exemptions

---

[9] Hardy submitted two declarations in support of DOJ's summary judgment motion. The first declaration is at ECF No. 23-2 pp. 62–72. The second is located at ECF No. 23-2 pp. 20–55. The court will refer to the Declarations as the Hardy Decl. and the Second Hardy Decl., respectively.

upon which the agency relied still support its decision to withhold the records. Defs. Opp. Mot. to Reconsider p. 4.

The FBI's response is insufficient. It appears that the Cuyahoga County case was not a simple matter involving a few public officials whose criminal case dockets Viola could have reviewed and cited in his motion to reconsider. Rather, Hardy explained that the Cuyahoga County fraud investigation targeted more than fifty individuals. ECF No. 23-2, Second Hardy Decl. ¶ 28. While it is unclear how many cases were filed and how many people were ultimately prosecuted, there is no indication that it would have been a simple matter for Viola to identify all those prosecuted, review the dockets in their cases, and provide evidence that all appeals had been resolved. Moreover, the court takes judicial notice of the docket in *United States v. Calabrese*, 11-cr-437 (N.D. Ohio), ECF Nos. 31, 38, 46, one of the Cuyahoga County corruption cases, which appears to support Plaintiff's position, because sentencing occurred in March 2015, and no appeals were filed.

Although agency declarations are entitled to a presumption of good faith, given the unique circumstances here, the court finds that the FBI has not met its burden of establishing that it was entitled to withhold records pursuant to exemption 7. This is not a situation where the agency is being asked to prove a negative. Rather, Hardy declared that "a few" appeals were pending at the time of the summary judgment submission. Second Hardy Decl. ¶¶ 30, 33. It is not burdensome to require the FBI to list those cases that are or were still on appeal in order to substantiate the FBI's reliance on exemption 7.

Further, even if there were ongoing appeals at the time the FBI filed its summary judgment declaration, the court is not certain whether the FBI may legally continue relying on that exemption if the appeals have now been resolved. To the extent exemption 7 is no longer a viable basis for

withholding the records, the FBI must establish—not just simply assert in its brief—that the withheld records all fall within the other exemptions or that there are no segregable records.[10]

### III. CONCLUSION

For the reasons set forth above, the court will DENY in part and GRANT in part Plaintiff's Motion for Reconsideration.

Date: June 11, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[10] The court will not address the other arguments Viola raises in the motion for reconsideration because they do not alter the court's prior decision and/or are not issues properly before this court. *See* Pls. Mot. for Reconsideration ¶ 2 (Viola takes issue with this court's reference to his "apparent" acquittal in his second trial); *id.* ¶ 3 (Viola again raises alleged errors by the trial court in his criminal proceeding); *id.* ¶ 6 (Viola contends that the DOJ hid evidence in his criminal case); *id.* p. 4–5 (Viola alleges 6th Amendment violations in his criminal proceeding and asks this court to refer for investigation by the DOJ's Inspector General the matter of the death of potential witness in his criminal case).