UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ANTHONY L. VIOLA**, </br></br> Plaintiff, </br></br> v. </br></br> **UNITED STATES DEPARTMENT OF JUSTICE,** *et al.*, </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 16-cv-1411 (TSC) </br> ) </br> ) </br> ) |

## MEMORANDUM OPINION

Before the court in this Freedom of Information Act (FOIA) lawsuit are the following pleadings:

- Defendants' Supplemental Motion for Summary Judgment, ECF No. 55 and Plaintiff's Opposition, ECF No. 59;

- Plaintiff's Motion to Vacate, ECF No. 60 and Plaintiff's Affidavit in Support of Motion to Vacate, ECF No. 61;

- Plaintiff's Motion for Judgment, ECF No. 63;

- Plaintiff's Civil Statement, ECF No. 64; and

- Plaintiff's Motion to take Judicial Notice, ECF No 67.

Upon review of the pleadings and for the reasons set forth below, the court will DENY Plaintiff's motions and GRANT Defendants' Supplemental Motion for Summary Judgment.

### I. BACKGROUND

*Pro se* Plaintiff Anthony L. Viola originally sought third-party records from the Executive

Office of the United States Attorney (EOUSA) and the FBI, both of which are components of the United States Justice Department (DOJ).  The court granted DOJ's motion for summary judgment in part, *Viola v. DOJ,* 306 F. Supp. 3d 321, 323 (D.D.C. 2018) ("*Viola I*"), and later granted Plaintiff's Motion to reconsider in part, *Viola v. DOJ*, No. 16-cv-1411 (TSC), 2019 WL 2437692 (D.D.C. June 11, 2019) ("*Viola II*").  DOJ now moves for summary judgment on one of the two issues remaining post *Viola II*.  Plaintiff moves the court to vacate prior orders, enter judgment in his favor and appoint him counsel.

In 2011, an Ohio federal jury found Plaintiff guilty of conspiracy to commit mortgage fraud. *United States* v. *Lesniak,* 8–cr–506 (N.D. Ohio), ECF Nos. 54, 245.  Plaintiff brought numerous unsuccessful challenges to his conviction, some of which involved claims that the United States District Court Judge (hereinafter "sentencing judge"), who presided over Plaintiff's federal criminal trial and sentenced him, turned a blind eye to alleged prosecutorial misconduct and ineffective assistance of counsel.  *Viola I*, 306 F. Supp. 3d at 323.  Plaintiff appears to believe that the sentencing judge was trying to protect himself from potential embarrassment and/or prosecution because of his purported connection to *United States v. Calabrese*, 11-cr-437 (N.D. Ohio), a public corruption criminal prosecution that involved numerous Cuyahoga County, Ohio defendants.  *Viola I*, 306 F. Supp. 3d at 323–24.  Part of the discovery turned over by the government in *Calabrese* contained telephone calls between the sentencing judge and some of the targeted public officials.  *Id*. at 324.  But the judge assigned to *Calabrese* found that none of the calls revealed wrongdoing or criminal activity on the part of Plaintiff's sentencing judge.  *Id*.

Unconvinced, Plaintiff filed FOIA requests seeking records from the EOUSA regarding the sentencing judge.  Plaintiff also sought records regarding Paul Tomko, an FBI "expert" and

"informant," whom Plaintiff alleges reviewed key documents in Plaintiff's mortgage fraud case and who was later allegedly imprisoned for mortgage fraud. *Id*. at 325.

## II.   ANALYSIS

### A.  EOUSA

Plaintiff requested all records that "reference" the sentencing judge, as well as oral recordings and transcripts of the judge's conversations with targeted public officials James Dimora and Frank Russo. *Id.* at 326. The EOUSA withheld the records pursuant to the Privacy Act, 5 U.S.C. § 552a, because they concerned third parties and Plaintiff had not submitted: (1) consent from the third parties, (2) proof that they were deceased, or (3) evidence that the public interest in disclosure outweighed the third parties' privacy interests. *Viola I*, 306 F. Supp. 3d at 326.

The EOUSA also withheld the records because they were exempt pursuant to FOIA Exemption (b)(6), which allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," as well as Exemption (b)(7)(C), which allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Viola I*, 306 F. Supp. 3d at 326; 5 U.S.C. § 552(b)(6), (b)(7)C).

The EOUSA instead searched its LIONS records database using various forms of Plaintiff's name, as well as other search terms from his FOIA request. *Viola I*, 306 F. Supp. 3d at 326–29. Because Plaintiff had been prosecuted by the U.S. Attorney's Office for Northern District of Ohio, the agency searched its computer tracking system for the records maintained by that office. *Id*. at 326–27. According to an EOUSA declarant, each U.S. Attorney's Office "maintains the case files for

criminal matters prosecuted by that office" and there were "no other records or systems or locations within the EOUSA in which . . . files pertaining to plaintiff's request were maintained." *Id*.

Plaintiff challenged the search as inadequate, disputing that responsive files were confined to the U.S. Attorney's Office for the Northern District of Ohio. *Id*. at 327. He argued that because the FBI and other federal agencies had joined forces with Ohio state law enforcement officials to form the Mortgage Fraud Task Force (MFTF), whose work led to his prosecution, the FBI was required to "search the joint federal-state task force" records. *Id.* at 327–28.

This court rejected Plaintiff's argument because he had not overcome the presumption accorded the EOUSA's declaration that any relevant MFTF records maintained by DOJ would be found in the agency's database. *Id*. at 328–29. Instead, Plaintiff offered "purely speculative claims about the existence and discoverability of other documents" which did not undermine the EOUSA's assertions. *Id*. at 329; *see SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (cleaned up and citation omitted). And even if the EOUSA had transferred documents to the MFTF as Plaintiff alleged, this court agreed with the EOUSA that it had no duty to search files it did not maintain. *Viola I*, 306 F. Supp. 3d at 329; *see Dipietro v. Exec. Off. for U.S. Att'ys*, 357 F. Supp. 2d 177, 182 (D.D.C. 2004) (citation omitted) ("No agency is obligated to produce records that it does not maintain."); *Weisberg v. DOJ*, 705 F.2d 1344, 1363 (D.C. Cir. 1983) ("[E]ven if an agency creates a document, FOIA requires disclosure only of records 'for which agencies have chosen to retain possession or control.'") (internal alterations omitted) (citing *Kissinger v. Reporters Committee,* 445 U.S. 136 (1980)).

Plaintiff filed a motion to reconsider, contending that the court had not considered an argument he claimed to have raised in his briefs—namely that the MFTF constituted a federal agency for FOIA purposes. *Viola II*, 2019 WL 2437692, at * 2. The cases Plaintiff cited in support of this argument, however, stood for a slightly different proposition: that under some circumstances, disclosure may be required even where records are held by a non-agency, if the agency either created or obtained the records, and was in control of the records at the time of the FOIA request. *Id*. at *3 (citing *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144 (1989)).

Here, there was no evidence that these criteria were met. The DOJ declaration explained that there were no records systems outside its Ohio LIONS database where files pertaining to the mortgage fraud prosecution were maintained. *Viola I*, 306 F. Supp. 3d. at 326–27; *Viola II*, 2019 WL 2437692, at *1–2. And Plaintiff's own evidence was inconsistent with his position, and actually supported the agency's declarant. *Viola II*, 2019 WL 2437692, at *2–3. Plaintiff submitted an affidavit from Arvin Clar, a former MFTF Director and Assistant Director, who explained that certain "cooperating" federal entities shared information with the MFTF, but those entities were not "signatory participating members" to the Memorandum of Understanding establishing the task force. *Id*. at *2. Moreover, no federal agencies provided funding for the investigation, and the MFTF "possessed its own secured evidence room or location under the supervision of the Task Force director for the purpose of securing and maintaining" evidence, and no federal agency "had any right of authority or control over the activities of" the task force. *Id*. In light of this evidence, the court denied Plaintiff's motion to reconsider the adequacy of EOUSA's search.

Notwithstanding the court's two prior decisions on the issue, Plaintiff raises the same argument again in his opposition to DOJ's Supplemental Summary Judgment Motion, ECF No. 59,

Pls. Opp. to Supp. Mot. at 1, 4, as well as in his Motion to Vacate, ECF No. 60 at 1, 4–6, and in his "Additional Documents in Support of Pending Pleadings," ECF No. 64 at 1. He again asks this court to reconsider its ruling, claiming to have discovered "new evidence."

Pursuant to "Rule 54(b) of the Federal Rules of Civil Procedure, the district court may revise its own interlocutory orders 'at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Davis v. Joseph J. Magnolia, Inc.*, 893 F. Supp. 2d 165, 168 (D.D.C. 2012). But Rule 54 relief is "discretionary" and "should not be granted unless the movant presents either newly discovered evidence or errors of law or fact which need correction." *Id.* (quoting *Nat'l Trust for Hist. Pres. V. U.S. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)). "Newly raised" evidence does not meet the Rule 54 standard where it was "previously available." *Schoenbohm v. FCC,* 204 F.3d 243, 250 (D.C. Cir. 2000) (quoting *ICC v. Bhd. of Locomotive Eng'rs,* 482 U.S. 270, 283 (1987)).

Here, with one exception, all Plaintiff's "new" evidence was available before March 31, 2018 and June 6, 2019, when this court issued its prior rulings on the EOUSA search. *See* ECF No. 60, Mot. to Vacate at 1–2; ECF No. 61, Pls. Aff. at Exs. H–L.

Moreover, even if the evidence were new, it does not support Plaintiff's position regarding EOUSA control over the MFTF records. Plaintiff proffers an undated document, with references to 2009, that appears to be the grant proposal to establish the MFTF. ECF No. 61, Pls. Aff. at Ex. H. He also proffers a January 11, 2011 hearing transcript excerpt of what appears to be an argument by a federal prosecutor, stating that "we do not have control" over certain unnamed files and that the government did not have the ability to force someone "in the county" to turn them over. *Id*. at Ex. I.

In another 2011 transcript excerpt, a federal prosecutor simply states that his office was "a part of" the MFTF.  ECF No. 64-1 at Ex. A.

Plaintiff also submitted the Memorandum of Understanding mentioned by MFTF official Clar.  ECF No. 61, Pls. Aff. at Ex. J.  The Memorandum does not discuss federal control of MFTF records, but suggests that only local entities maintained the evidence: "Any information gathered and/or report(s) generated by TF #08-1 during the course of its investigation that is maintained by the task force, a prosecutor, the Attorney General, a special prosecutor, or the Commission is deemed a confidential law enforcement investigatory record for purposes of ORC 149.43." *Id*. at 3.  Plaintiff's "new" evidence also includes the resume of a former MFTF employee, whom Plaintiff claims died during the mortgage fraud investigation and whom Plaintiff mentioned in his March 2017 opposition to DOJ's summary judgment motion.  ECF No. 61, Pls. Aff. at Ex. K; *see Viola I*, 306 F. Supp. 3d at 328.  The relevance of this document is unclear, as is the relevance of a subpoena the MFTF sent to the Cuyahoga County human resource office seeking employment records for the employee, ECF No. 61 at Ex. L, and what appears to be a description of a video that apparently discusses the agencies that collaborated on the MFTF, *id*. at Ex. M.

As the moving party, Plaintiff has the burden of demonstrating that he is entitled to relief pursuant to Rule 54.  *See Stewart v. Fed. Commc'ns Comm'n*, 189 F. Supp. 3d 170, 173 (D.D.C. 2016).  Having offered no "newly discovered" evidence and/or no relevant evidence that would support his position regarding the MFTF, he has failed to meet this burden to show that the EOUSA's search was inadequate.

## B. FBI Search: Sentencing Judge

Plaintiff sent similar FOIA requests to the FBI, seeking audio files and transcripts of the

recordings of the sentencing judge's conversations with Dimora and Russo, as well as any FBI 302 forms regarding the judge, and any related notes. *Viola I*, 306 F. Supp. 3d at 329–30. Because of Privacy Act restrictions and because the requested documents included law enforcement files, the FBI withheld responsive records pursuant to FOIA Exemptions 6—relating to personnel and medical files—as well as law enforcement records Exemptions 7(A), 7(C), 7(D) and 7(E). *Id*. at 332. With respect to Exemption 7(A), which allows an agency to withhold law enforcement records where disclosure "could reasonably be expected to interfere with enforcement proceedings," the FBI refused to disclose the FBI 302s because at the time the request was filed, there were several pending appeals in the Cuyahoga County cases. *Id.*; 5 U.S.C. § 552(b)(7)(A).

Finally, the FBI also withheld the tapes and transcripts regarding the sentencing judge pursuant to Exemption 3, which allows agencies to withhold records "specifically exempted from disclosure by statute" because the tape recordings and transcripts are protected pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20, concerning lawful interception and recording of electronic communications. *Viola I*, 306 F. Supp. 3d at 333. The FBI explained that the recordings and transcripts were sealed pursuant to a court order, which was itself sealed. *Id*.

Plaintiff did not respond to the FBI's Exemption 6 or 7 arguments, nor did he respond to the FBI's Statement of Facts, *Viola I* at 333, even though the court warned him that failing to respond might result in the court treating the matter as conceded. ECF Nos. 17, 24. Instead, Plaintiff challenged only the Exemption 3 withholding, arguing that the tapes were "widely" disseminated during discovery in the corruption prosecutions, were played in open court, and the government had not sought a protective order. *Viola I*, 306 F. Supp. 3d at 333.

After taking judicial notice of the docket in one of the Cuyahoga County corruption cases, which contained several motions and orders—some of which are sealed—involving protective orders, *see United States v. Calabrese*, 11-cr-437 (N.D. Ohio), ECF Nos. 31, 38, this court rejected Plaintiff's argument regarding the tapes because he failed to produce competent evidence supporting his contention that the tapes had been disseminated. *Viola I*, 306 F. Supp. 3d at 333.

In his motion to reconsider, Plaintiff again argued the tapes had been widely disclosed, but did not cite to a judicial proceeding in which the tapes and/or transcripts were disclosed without a protective order, instead merely speculating that there was no protective order—despite evidence from the *United States v Calabrese*, 11-cr-437 (N.D. Ohio) docket to the contrary. *Viola II*, 2019 WL 2437692 at *5–6. Consequently, the court rejected this argument. *Id.*

Plaintiff also challenged, for the first time, the FBI's reliance on Exemption 7(A), which relates to ongoing criminal investigations. *Id.* at *6. He contends that a search of the law computer in prison confirmed there were no pending appeals in the Cuyahoga County corruption cases. *Id.*

The FBI did not directly address Plaintiff's argument in its reply, but argued that even if Exemption 7(A) was inapplicable, the other exemptions upon which it relied still supported its decision to withhold the records. ECF No. 38, Defs. Opp. to Mot. to Reconsider at 4. The court neglected to address this argument in its Opinion on the motion to reconsider, instead finding that the agency had not met its burden on the Exemption 7(A) withholding. *See Viola II*, 2019 WL 2437692 at *6–7.

DOJ subsequently filed its currently pending supplemental motion for summary judgment on the issue of the FBI's Exemption 7(A) withholding. ECF No. 55. A DOJ declarant confirmed on October 23, 2019 that an appeal was pending in the case against Dimora, *Dimora v. United States*,

18-4260 (6th Cir.).  ECF No. 55, Defs. Supp. MSJ at 8–9.  The agency also reiterated its argument that the records are exempt pursuant to the other exemptions it had relied on in its original briefing.  *Id*. at 4.

Plaintiff responded that the *Dimora* conviction had since been upheld on direct appeal and Dimora's 28 U.S.C. § 2255 habeas petition attacking his sentence had been denied.  ECF No. 59, Pls. Resp. to Supp. MSJ at 2–3.  The D.C. Circuit has explained that "Exemption 7(A) is temporal in nature," and so the underlying law enforcement "proceeding must remain pending at the time of our decision, not only at the time of the initial FOIA request."  *Citizens for Resp. & Ethics in v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) (citations omitted).

The DOJ did not file a reply in support of its Supplemental Motion for Summary Judgment, and therefore has not responded to Plaintiff's argument on Exemption 7(A).  Plaintiff asks this court to therefore treat his argument as conceded.  ECF No. 63.  But DOJ's failure to respond is not fatal for two reasons.

First, contrary to Plaintiff's assertion, a review of the public docket in *Dimora* reveals that the Sixth Circuit did not deny the habeas petition and the matter is indeed ongoing.  On August 31, 2020, the Sixth Circuit vacated the District Court's denial of Dimora's habeas petition and remanded the case for further proceedings.  *Dimora*, 18-4260, ECF No. 51.  The Circuit mandate issued on January 6, 2021, *id*. at ECF No. 62, and on March 14, 2022, the District Court granted the petition in part and set a sentencing date for June 8, 2022.  *United States v. Dimora*, 10-cr-387-SL (N.D. Ohio), ECF No. 1226.  Because Dimora is facing sentencing, his criminal proceedings are not "final," and therefore the court finds that the FBI has met its burden with respect to Exemption 7(A).  *See Basey v. Dep't of the Army*, No. 4:16-CV-00038-TMB, 2018 WL 8798586, at *9 (D. Alaska May 14, 2018) ("Although

Plaintiff's trial has concluded and Plaintiff is currently awaiting sentencing, the Court finds that Exemption 7(A) remains applicable at least pending the conclusion of sentencing and the statutory period for a notice of appeal."); *Adionser v. DOJ*, 811 F. Supp. 2d 284, 298 (D.D.C. 2011), *aff'd in part sub nom. Adionser v. DOJ*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012) (finding that "because [the] co-defendant's conviction [wa]s *not* final, disclosure of the withheld materials could reasonably be expected to interfere with the ongoing criminal proceeding.") (emphasis in original); *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1089–90, 1096–98 (D.C. Cir. 2014) (reversing District Court court's grant of summary judgment to an agency that withheld FD-203s pursuant to Exemption 7(A) where "several outstanding convictions and sentencing proceedings" had yet to be completed at the time of the District Court decision, but the sentencings had been completed and all appeals confirmed by the time of the Court of Appeals decision); *Kansi v. DOJ*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) (citations omitted) (noting that "potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption exists at least until plaintiff's conviction is final").

Second, DOJ's failure to file a reply brief is not fatal to its argument because it lawfully relied on other exemptions to withhold the requested records, *Viola I*, 306 F. Supp. 3d at 330, 332–34, and Plaintiff did not—in the original summary judgment briefing, briefing on the motion to reconsider or during the current round of briefing—respond to DOJ's argument that the other stated exemptions are sufficient to support withholding the records. And, although the agency did not produce a *Vaughn* index, that is likewise not fatal to the government's motion for summary judgment on the remaining exemptions. *See Maydak v. DOJ*, 218 F.3d 760, 766 (D.C. Cir. 2000) ("[T]he government does not necessarily have to produce a *Vaughn* index to justify denying a FOIA request under other

exemptions . . . . [W]e have upheld the government's assertion of FOIA exemptions other than 7(A) based on something less than a *Vaughn* index.") (citations omitted). Finally, the DOJ declarant averred that the FBI was unable to reasonably segregate "any information without causing harm to the asserted exemptions." ECF No. 23-1, Defs. Renewed Statement of Facts ¶¶ 37, 41–42; ECF No. 23-2, Defs. Exs., Attachment 2, Second Hardy Decl. ¶¶ 26, 63–64. Accordingly, the court will grant DOJ's supplemental summary judgment motion on the issue of the FBI's search for records relating to the sentencing judge.

### C. FBI Search: Tomko

Plaintiff also requested FBI 302s relating to Paul Tomko and any reports that he provided to the FBI or United States Attorney's office. *Viola I*, 306 F. Supp. 3d at 329–30. During the first round of briefing, the court found that the parties had not addressed the issue of exhaustion as it related to the Tomko request and ordered further briefing. *Id*. at 331–32, 334.

The FBI eventually released records regarding Tomko on September 9, 2019. ECF No. 55, Defs. Supp. MSJ at 6–7. After additional litigation, the FBI agreed to release additional non-exempt records and this court entered an order consistent with the agency's representations. *See id*.; 10/16/2019 Min. Order. In its pending supplemental summary judgment brief, the FBI explained that it was prepared to release additional non-exempt records regarding Tomko on or before November 15, 2019, and again on December 16, 2019. Defs. Supp. MSJ at 7. There is no allegation that the FBI failed to do so.

Consequently, the only remaining issue in this litigation is whether the FBI fulfilled its FOIA obligations with respect to the release of the Tomko records. By separate order, the court will direct the parties to file a joint status report or proposed briefing schedule on this issue.

### D. Plaintiff's motions

Plaintiff's motions are without merit.  For the reasons already explained, the court will deny Plaintiff's Motion for Judgment, ECF No. 63, in which he points out that DOJ did not respond to his motion to vacate and asks this court to treat his arguments as conceded and grant judgment in his favor.

In Plaintiff's Motion to take Judicial Notice, he asks this court to consider "admissions" DOJ made in a FOIA case he filed in Pennsylvania federal court seeking records relating to his prosecution.  ECF No. 67.  Plaintiff contends DOJ's "admissions" in that case are evidence that the agency had an obligation to search the MFTF files.  In support, he proffers a motion DOJ filed with the Third Circuit, in June 2020, in which it admits that, while reprocessing responsive records on remand, the EOUSA "referred to the FBI a number of records for which the FBI was the custodian.  When the FBI received those records, it discovered that they had not been processed during the initial phase of district court litigation.  The FBI investigated why the records were not initially processed and found that when it had initially searched for and gathered records, it had inadvertently failed to obtain all portions of the responsive records."  ECF No. 67, Attachment at ECF p. 3.  These representations do not amount to "admissions" that would alter the court's findings on the MFTF records, and therefore the court will deny Plaintiff's motion.

In his Motion to Vacate, ECF No. 60, and accompanying evidentiary submissions, ECF No. 61, Plaintiff asks this court to vacate its prior decisions based on "newly discovered" evidence.  Much of this motion contains arguments on matters that are not before this court and are outside of this court's jurisdiction, such as alleged impropriety associated with his criminal prosecution and

decisions the sentencing judge made in the criminal proceedings. The motion also contains new arguments and relies on purportedly new evidence that does not support Plaintiff's position and which this court has already addressed above. Accordingly, the court will deny the motion to vacate.

Plaintiff also asks this court to appoint him counsel in light of proceedings in the Pennsylvania FOIA case. ECF No. 60 at 8–9; ECF No. 61, Pls. Aff. at Ex. O. In that case, Plaintiff sought records from DOJ as well as from the state MFTF officials regarding the deceased MFTF employee and "exculpatory evidence" the United States allegedly withheld in his mortgagee fraud prosecution. ECF No. 60 at 8. After the Pennsylvania court granted DOJ summary judgment, Plaintiff appealed, and he asserts that during the pendency of the appeal DOJ "admitted making materially false statements concerning records in the possession of the" EOUSA. *Id*. at 8–9. But the document Plaintiff proffers as evidence of this admission is a letter informing the Pennsylvania court that, in the process of preparing its appellate brief, DOJ discovered that it had incorrectly described certain documents in its *Vaughn* index filed before the District Court. ECF No. 61 at Ex. O. Accordingly, DOJ asked the Court of Appeals to vacate the district court decision and remand the matter, after which DOJ planned to prepare a new *Vaughn* index. *Id*.

Plaintiff also notes that the Third Circuit appointed counsel for him and asks this court to review the brief filed by his appointed counsel in that matter and appoint counsel for him here. ECF No. 60 at 8–9. The court will deny this request.

Plaintiff has not explained how any of the proceedings in his Pennsylvania case impact this case, nor has he offered any reason to suggest that appointment of counsel is necessary and appropriate. A plaintiff in a civil case does not have an absolute constitutional or statutory right to court-appointed counsel. *See Ray v. Robinson,* 640 F.2d 474, 477 (3d Cir.1981). In this district,

appointment of counsel from the Civil Pro Bono Panel is available to *pro se* plaintiffs who are proceeding *in forma pauperis*. *See* LCvR 83.11(b)(3). Plaintiff is not proceeding *in forma pauperis*, and even if he qualified for *in forma pauperis* status, a decision on whether to appoint counsel "must take into account the nature and complexity of the action, the potential merit of the *pro se* party's claims, the demonstrated inability of the *pro se* party to retain counsel by other means, and the degree to which the interests of justice will be served by appointment of counsel." *Plummer v. District of Columbia*, No. CIV.A.07-1161 (RMU), 2008 WL 3972183, at *2 (D.D.C. Aug. 27, 2008); LCvR 83.11(b)(3). Plaintiff has not established that his case meets any of those criteria.

In all his filings, Plaintiff has repeatedly asked this court to take action with respect to his criminal prosecution and related litigation, even though this court has explained it has no connection to or jurisdiction over those matters. Plaintiff also continues to raise new arguments and file supplemental pleadings without leave of court, requiring the court and DOJ to repeatedly comb through his filings to identify his position on the actual controversy at issue. And he continues to make assertions and arguments that are clearly inconsistent with or unsupported by the evidence he proffers.

Plaintiff's filings follow his numerous post-trial motions and appeals in his criminal proceedings, which led an Ohio federal court to declare him a "vexatious litigator" and enjoin him from further filings associated with his sentence unless he obtained permission from the Sixth Circuit. *United States v. Lesniak, et al.,* 8-cr-506 (N.D. Ohio), ECF No. 541 at 6.

Going forward the court may strike any portion of Plaintiff's pleadings that raise new arguments other than those the court has identified for resolution. Plaintiff may not file supplemental pleadings without leave of court, and any motion for leave to file shall be limited to one page.

Plaintiff's failure to adhere to the Federal Rules of Civil Procedure, the court's local rules or this court's orders may result in sanctions, up to and including dismissal of this action.

### III.     CONCLUSION

For the reasons set forth above, the court will GRANT DOJ's motion for summary judgment as it relates to the documents it withheld regarding the sentencing judge. The court will issue an order directing the parties to file a joint status report and/or proposed briefing schedule regarding Plaintiff's FOIA request for records relating to Tomko.

Date: March 31, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge