# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**ANTHONY L. VIOLA**,

Plaintiff,

v.

**U.S. DEP'T OF JUSTICE,** *et al.*,

Defendants.

---

Civil Action No. 16-cv-1411

## MEMORANDUM OPINION

Plaintiff Anthony Viola, proceeding *pro se,* is currently incarcerated. He challenges Defendants' responses to his Freedom of Information Act ("FOIA") request for records related to Paul Tomko, a former Federal Bureau of Investigation ("FBI") informant. Defendants have moved for summary judgment on the remaining issues in dispute. Defs.' Supp. Mot. for Summ. J at 1–20, ECF No. 84 ("Defs.' Mot."). For the reasons below, the court will GRANT Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

In 2016, Plaintiff filed the underlying FOIA complaint. *See* Compl. at 1–15, ECF No 1. He claimed that Tomko's records should be released because Tomko "was inside" the government "reviewing documents" in Plaintiff's ongoing criminal investigation while engaging in his own criminal behavior. *See id.* at 14. Plaintiff attached to his Complaint two 2014 Ohio newspaper articles reporting that Tomko was a former FBI informant and was sentenced for a variety of fraud related charges. Compl. Ex. at 29–30, ECF No. 1-1. Neither article reported that Tomko worked

on Viola's case.  *Id.*  Nor did any other public document.  Defs.' Stmt. of Undisputed Mat. Facts

¶ 6, ECF No. 84-1 ("Defs.' Stmt.").[1]

On May 6, 2009, Plaintiff was indicted on two counts of conspiracy and thirty-four counts

of wire fraud.  Superseding Indictment at 1–55, ECF No. 54, *United States v. Viola*, Case No. 8-

cr-506-6 (N.D. Ohio May 6, 2009).  On March 30, 2011, a jury in the Northern District of Ohio

found him guilty on all but one count.  Jury Verdict at 1–36, ECF No. 244.  On January 5, 2012,

he was sentenced to 60 months for conspiracy and 150 months for each of the remaining thirty-

three wire fraud counts—to run concurrently.  Judgment at 1, ECF No. 363.  Since 2012, Plaintiff

has spent years contesting his conviction.  *See* ECF Nos. 369, 375, 380, 383, 442, 445, 454, 456,

463, 470, 474 482 (showing multiple appeals and post-conviction motions from 2012 to 2015).

As Defendants now confirm, Tomko was indeed a former FBI informant.  In 2007, he

signed a paid cooperation agreement with the FBI in which he agreed to "take full responsibility"

for and "make full disclosure of his own mortgage fraud-related violations and assist the FBI in

other mortgage fraud investigations."  Defs.' Stmt. ¶ 1.  On October 27, 2009, a judge in the

Northern District of Ohio sentenced Tomko to three years' probation for one count of mail fraud

in violation of 18 U.S.C. § 1341.  *Id.* ¶ 1; Judgment at 1–2, ECF No. 16, *United States v. Tomko*,

No. 09-cr-291 (N.D. Ohio Oct. 27, 2009).

In 2013, because Tomko "used information he collected in his capacity as a paid cooperator

to further his own criminal activities," he pleaded guilty to "one count of conspiracy to commit

---

[1] Plaintiff did not respond to Defendants' Statement of Undisputed Facts.  The court will therefore accept Defendants' factual assertions and supporting documents as true in the absence of any controverted evidence by Plaintiff.  *Neal v. Kelly*, 963 F.2d 453, 456–57 (D.C. Cir. 1992) ("[A]ny factual assertion in the movant's affidavits will be accepted by the [Court] as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion.").

wire fraud, two counts of wire fraud, one count of student loan fraud, and one count of concealment." Defs.' Stmt. ¶ 2. He was sentenced to 52 months in prison. *Id.* While serving that sentence, Tomko was indicted on December 2, 2014, for operating an identity-theft and credit-card fraud scheme. *Id.* ¶ 3. In 2014, he was again sentenced to 74 months of imprisonment for one count of bank, wire, and access fraud, to run concurrently, but consecutive to Tomko's 2013 conviction. *Id.*; Judgment at 1–2, ECF No. 23, *United States v. Tomko*, No. 14-cr-427 (N.D. Ohio Sept. 10, 2015).

Despite Tomko's multiple convictions for crimes committed while he was an informant, it is undisputed that Tomko "was not a trial witness" in Plaintiff's or any of his co-defendants' trials. Defs.' Stmt. ¶ 7.

In 2015, as part of Plaintiff's ongoing effort to challenge his conviction, he filed a FOIA request for "[a]ll FBI 302s—and the agent's original notes—from any and all interviews with 'Paul Tomko' along with any reports by Mr. Tomko that were presented to the FBI to the U.S. Attorney's Office." Defs.' Stmt. ¶ 9 (citation omitted); Pl.'s Ex. K, FOIA/PA Information Req. at 1, ECF No 87-1 ("Pl.'s Ex. K").

Because Plaintiff's request concerned "one or more third party individuals" with "important privacy interests," the FBI responded on December 11, 2015, that under FOIA Exemptions 6 and 7(c), it could "neither confirm nor deny the existence" of such records absent "1) an express authorization and consent from the third party individual, 2) proof of death, or 3) a justification that the public interest in disclosure outweighs personal privacy interests." Defs.' Stmt. ¶ 10 (internal quotation marks and citation omitted). The FBI explained that if Plaintiff sought disclosure based on the public interest, he would have to "show the public interest in disclosure significantly outweighs the individual's privacy interest, and [that] the requested

information is likely to advance that interest." *Id.* (alteration in original) (internal quotation marks and citation omitted).

The FBI has a "longstanding policy" of issuing a so-called "*Glomar* response," Defs.' Stmt. ¶ 17, which permits it to "refuse to confirm or deny the existence of records" in limited circumstances. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir.2007); *see also Phillippi v. CIA*, 655 F.2d. 1325, 1327 (D.C. Cir. 1981) (establishing the legal authority for *Glomar* responses). Here, the FBI issued such a response because Plaintiff sought "access to information regarding a third party, but fail[ed] to meet one of the three aforementioned conditions precedent." Defs.' Stmt. ¶ 17 (internal quotation marks and citation omitted).

After Plaintiff filed this case in 2015, Defendants maintained their *Glomar* response for years while challenging whether Plaintiff had exhausted his administrative remedies regarding his Tomko records request. In 2018, this court granted in part and denied in part Defendants' first motion for summary judgment. *Viola v. U.S. Dep't of Just.*, 306 F. Supp. 3d 321, 323 (D.D.C. 2018). The court held, in part, that it was "unclear whether" Plaintiff had "exhausted his remedies." *Id.* at 331. Therefore, in June 2019, after Plaintiff moved for reconsideration of the court's summary judgment order, the court ordered, in part, additional briefing on whether Plaintiff did, in fact, exhaust. Am. Order at 1, ECF No. 43; *see also Viola v. U.S. Dep't of Just.*, No. 16-cv-1411, 2019 WL 2437692, at *4 (D.D.C. June 11, 2019) ("Plaintiff also requested records on Paul Tomko, but that request is the not subject of the motion to reconsider.")

In July 2019, Defendants sought, and received, more time to file their supplemental motion for summary judgment. Defs.' Mot. for Ext. of Time at 1–2, ECF No. 45 ("Ext. Mot."); Jul. 26, 2019 Min. Order. They explained that "upon further review, the FBI is no longer relying on its

Exemption 6 and 7(c) *Glomar* response as to FOIA subject Paul Tomko . . . and will process and release the responsive records to Plaintiff within 45 days." Ext. Mot. at 1.

In October 2019, after receiving two more extensions, Defendants moved to stay and/or vacate its supplemental summary judgment briefing, explaining:

> "After evidence emerged of public disclosure of Tomko's role as a "paid cooperator" – and an unattributed newspaper article describing him as a "paid informant" – the FBI informed the Court of its determination to abandon its exclusive reliance on its Exemption 6 and 7(c) *Glomar* response as to Tomko. *See* ECF No. 45. It had also decided to no longer press an exhaustion-of-administrative-remedies argument. Instead, it determined to conduct a search and process certain records. On September 9, 2019, the FBI processed and released 14 pages to Plaintiff consisting of FD-302 interview/reporting statements, and corresponding Special Agents' hand-written interview/reporting statements relative to Tomko – partially piercing its original *Glomar* response to the extent of publicly acknowledged FBI investigations/prosecutions of Tomko."

Defs.' Mot. to Vacate and/or Stay the Supp. Summ. J. Briefing Schedule at 2, ECF No. 51 ("Defs.' Stay Mot."). Defendants continued that in "further refinement of its position that reflects respect for the presumption in favor of the 'fullest responsible disclosure' possible, the FBI is currently processing additional documents related to Tomko that fall within Plaintiff's FOIA request." *Id.* (citation omitted).[2]

On October 16, 2019, by consent of the parties, the court stayed the supplemental briefing and ordered Defendants to release all non-exempt Tomko records. Oct. 25 2019 Min. Order. On April 15, 2022, the court directed the parties to file a Joint Status Report regarding Defendants' productions of Plaintiff's Tomko records request. Apr. 15, 2022 Min. Order.

---

[2] Plaintiff complains that the FBI's reversed *Glomar* response was "disingenuous," "delayed" this litigation, and was "not appropriate" given that Tomko's informant status was already public by the time he filed his Complaint. Pl.'s Opp'n to Gov't Mot. at 9, ECF No. 87 ("Pl.'s Opp'n"). It is indeed curious that Defendants waited three years after Plaintiff's 2016 Complaint to confirm what other press releases already had: that Tomko was an FBI informant.

Of the eighty-seven responsive records regarding Tomko's records at the FBI from 2009 to 2015 that Defendants located, one page was released in full, forty-seven pages were released in part and forty-five pages were withheld in full—all under Exemptions 6 and/or 7 (c)–(e).  Decl. of Michael Seidel ¶ 9, ECF No. 84-2 ("Seidel Decl.").  "Consequently, the only remaining issue in this litigation is whether the FBI fulfilled its FOIA obligations with respect to the release of the Tomko records."  *Viola v. U.S. Dep't of Just.*, No. 16-cv-1411, 2022 WL 971327, at *6 (D.D.C. Mar. 31, 2022).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 248.

The "vast majority" of FOIA cases are decided on motions for summary judgment.  *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. U.S. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011); *Citizens for Resp. & Ethics in Wash*. *("CREW") v. U.S. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007).  An agency may be entitled to summary judgment in a FOIA case if, in addition to the absence of a material factual dispute, it has conducted an adequate search for responsive records, and each responsive record

that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Media Rsch.*, 818 F. Supp. 2d at 137. The declarations must describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption," and must not be "controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## III.    ANALYSIS

### A.  Adequacy of the FBI's Search

Defendants contend that summary judgment is warranted because the search for responsive Tomko records was adequate. Defs.' Mot. at 8–11.

An agency must explain the "scope and method of the search" in "reasonable detail," but need not provide "meticulous documentation [of] the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). It must also show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.*; *see also Kowalczyk v. U.S. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485

(D.C. Cir. 1984).  "Perfection is not the standard by which the reasonableness of a FOIA search is measured."  *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003).

Defendants' search was adequate.  According to a declaration submitted by Michael Seidel, Section Chief of the Information Management Division within the FBI, Defendants searched the Central Records System ("CRS"), the FBI's main document search system.  Seidel Decl. ¶ 34. That system is where Tomko's records would most reasonably be found, because Plaintiff sought Tomko's interview memoranda, corresponding handwritten interview notes, and reports provided to the FBI and the U.S. Attorney's Office by Tomko.  *Id.* ¶ 23.  The search terms Defendants used were appropriate for the task.  Defendants searched for Tomko's name in the normal convention ("Tomko, Paul R."), and used variations to change the ordered input of his name ("Tomko, Paul R.," "Paul R. Tomko," "Tomko, Paul").  *Id.* ¶ 33.  Defendants focused its CRS search from 2009 to 2015—the period during which Tomko was an FBI informant.  *Id.* ¶¶ 27–29.  And they exhausted two different indices for their search, as one index was succeeded by another in July 2012 due to technology reasons.  Defs.' Stmt. ¶ 31.

Plaintiff's arguments to the contrary are unavailing.  He first contends that Defendants' search was inadequate because the time parameter was between 2009 and 2015, at least two years after Tomko's 2007 cooperation agreement.  Pl.'s Opp'n at 2–3.  He also asserts that the FBI should have searched for Tomko's mortgage business that he used to engage in his fraudulent conduct.  *Id.*

But Plaintiff's FOIA request sought only "[a]ll FBI 302s—and the agent's original notes— from any and all interviews with 'Paul Tomko' along with any reports by Mr. Tomko that were presented to the FBI to the U.S. Attorney's Office."  Defs.' Stmt. ¶ 9.  Plaintiff did not specify a time period or mention Tomko's mortgage business.  A "temporal limit pertaining to FOIA

searches . . . is only valid when the limitation is consistent with the agency's duty to take *reasonable* steps to ferret out requested documents." *McGehee*, 697 F.2d at 1101 (emphasis in original). While Plaintiff did request "all" such records, it is unreasonable to expect the FBI to broaden its search to include years Plaintiff did not request. Defs.' Stmt. ¶ 9. Nor can Defendants glean from outside "the four corners" of Plaintiff's request that he specifically sought Tomko's mortgage records. *Kowalczyk*, 73 F.3d at 389. A plaintiff's "mere speculation" that "uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search" for them. *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994).

Accordingly, the court will grant Defendants summary judgment on the adequacy of its search.

### B. Claimed FOIA Exceptions

Defendants also seek summary judgment under FOIA Exemption 6 and 7(c)-(e) as applied to the eighty-seven responsive records the FBI located and partially produced to Plaintiff. Defs.' Mot. at 11–18. They further argue that their categorical withholding of Tomko's entire informant file was lawful under any of those same exemptions. *Id.*

The court will proceed in the following order: (1) whether Defendants' withheld information related to third parties per FOIA Exemption 7(c) was lawful; (2) whether the confidential information that Defendants obtained from Tomko can be withheld under Exemption 7(d); (3) whether Defendants' withheld storage method used for the collection of investigatory evidence under Exemption 7(e) was lawful; and, (4) whether Tomko's informant file can be categorically withheld under any of those named FOIA exemptions.[3]

---

[3] Plaintiff makes several arguments about alleged new evidence relating to Jimmy Dimora, Frank Russo, Dawn Pasela, and Don Nugent. Pl.'s Opp'n at 6–9, 13–14. But the court was clear in its last Memorandum Opinion that the only remaining issue in this case is the lawfulness of

### i.    FOIA Exemption 7

Under Exemption 7, withheld records must be "compiled for law enforcement purposes," but such records may only be withheld if disclosure would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982); *Public Emp. for Env't Resp. v. Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202–03 (D.C. Cir. 2014).  "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

Defendants easily establish that rational connection.  According to the Seidel Declaration, the FBI "is the primary investigative agency" "with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency[.]"  Seidel Decl. ¶ 39.  Investigating and documenting Tomko's fraud-related crimes between 2009 and 2015 was well within the FBI's purview.  *Id.* ¶ 40.  Indeed, Tomko agreed to become an informant as part of his cooperation plea agreement with the government.  *Id.* ¶ 41.  The court therefore finds that Defendants meet FOIA Exemption 7's threshold requirement.

### a.    FOIA Exemption 7(c) - Third Party Information

Exemption 7(c) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In determining whether this exemption applies, the court must balance the

---

Defendants' production and withholdings of Tomko's records.  *Viola*, 2022 WL 971327, at *6. The court will therefore not address Plaintiff's unrelated arguments at this juncture.

privacy interest of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011). "[T]he only public interest relevant for purposes of Exemption 7(c) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (internal quotation marks and citation omitted).[4]

### i.   FBI Special Agents and Professional Staff

Invoking Exemption 7(c), Defendants withheld identifying information regarding the FBI's special agents and professional staff. Defs.' Mot. at 13–14. Defendants argue that such withholdings are lawful because all FBI special agents and professional staff have important responsibilities regarding investigations that carry privacy risks if their identifying information is disclosed. Seidel Decl. ¶ 46. Defendants further argue that "no public interest would be served by disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities." *Id.* ¶ 49. The court agrees.

FBI special agents and professional staff have privacy interests that are clear, and there is minimal to no public interest in disclosing their identities. *See Safecard Servs. Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir.1991) (adopting a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity"). According to the Seidel Declaration, FBI special agents are typically randomly assigned to investigations and are responsible for conducting, supervising, and/or maintaining the

---

[4] Because the court finds that Defendants' withholdings under FOIA Exemption 7(c) were appropriate, it "need not consider whether Exemption 6 applies." *Spurling v. U.S. Dep't of Just.*, 425 F. Supp. 3d 1, 13 n.4 (D.D.C. 2019).

investigative activities related to Tomko and others. Seidel Decl. ¶¶ 46–48. The FBI's professional staff "handl[es] tasks" relating to those investigations and are therefore in "positions of access to information regarding official law enforcement investigations." *Id.* ¶ 49. Although the D.C. Circuit has "not had occasion to decide whether the *SafeCard* rule applies to former officials no longer in government service," *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003), even if the FBI's special agents or professional staff are no longer employees, they "could become targets of harassing inquiries for unauthorized access to investigations if their identities were released." Seidel Decl. ¶ 49. Publicity could prejudice their behavior in other investigations, lead to further investigation by interested parties, or foster "revenge" or a "grudge" by those affected. *Id.* ¶ 48. There is little public interest in releasing the contact information of the FBI personnel, because that reveals almost nothing about what the FBI is up to. *Id.* ¶ 49.

Plaintiff responds that the public disclosure of Tomko's association with criminal activity and the testimony at his trial diminishes the special agents' and professional staff's privacy interests and bolsters the public interest. Pl.'s Opp'n at 11. But he offers no support for this assertion. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 898 F. Supp. 2d 93, 105 (D.D.C. 2012) (finding that the court need not "quantify" a "privacy interest other than to conclude that it is more than nothing, because the plaintiff has not articulated any argument to support a public interest in the disclosure of the records that it seeks"). Indeed, nothing in the record suggests that any FBI special agent or professional staff was named in the press or at Plaintiff's trial. Defs.' Stmt. ¶ 6.

### ii.    *Other Third Party Information*

Defendants also appropriately withheld names and identifying information of other third-party groups: the victims of Tomko's crimes, people who were merely mentioned in responsive records, people who were of investigative interest to the FBI, and people who were non-FBI

government personnel mentioned in responsive witness statements.    Seidel Decl. ¶¶ 50–54. Defendants' rationale for doing so for each group is similar.  *See id.*  Tomko was convicted three separate times for criminal conduct, in 2009, 2013, and 2014.  Defs.' Stmt. ¶¶ 1–3; *see* Seidel Decl. ¶ 50.  Investigating that conduct required the assistance of many third parties.  Moreover, other than the financial fraud victims themselves, some third parties are only mentioned in the FBI's records because they "came into contact directly or indirectly with" FBI investigative subjects, like Tomko's family members.  Seidel Decl. ¶ 51.  Other third parties were identified as subjects of an investigation.  *Id.* ¶ 52.  The final group consists of a Bureau of Prison employee and Assistant United States Attorneys who aided the FBI's investigations.  *Id.* ¶ 53.

Each group's privacy interests are at stake if their identifying information is publicly disclosed.  According to the Seidel Declaration, the victims face "unnecessary attention" and may be further traumatized.  *Id.* ¶ 50.  The third parties whose information is mentioned because they simply encountered an FBI investigative subject could suffer unwarranted and "extremely negative" public attention.  *Id.* ¶ 51.  Investigative subjects and their families could face "harassment or embarrassment, as well as undue public attention."  *Id.* ¶ 52.  The non-FBI personnel's "effectiveness in assisting or participating in future FBI investigations" could be impaired.  *Id.* ¶ 53.

Plaintiff argues that Tomko's privacy interests, rather than the third parties' interests, are relevant.  Pl.'s Opp'n at 11.  But the court need only balance the privacy of individuals mentioned in the records against the public interest in disclosure.  *See Schrecker*, 349 F.3d at 661 ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.").

The public interest here is negligible for the same reasons articulated for the FBI special agents and professional staff. *See supra* Section III.B.i.a. No operation or activity in the FBI would be revealed to the public by publicizing the identifying information of other third parties in the records Plaintiff seeks. Seidel Decl. ¶¶ 50–54.

The court therefore finds that Defendants' withholdings of the other third parties' identifying information is lawful under FOIA Exemption 7(c).

### b.  FOIA Exemption 7(d) - Confidential Information Obtained from Tomko

Exemption 7(d) protects from disclosure information that "could reasonably be expected to disclose the identity of a confidential source," and, in the context of a criminal investigation, "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of [FOIA] Exemption 7(d) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis. *Id.* at 179–80. "A source is confidential within the meaning of exemption 7(d) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (internal quotation marks and citation omitted).

Defendants, having confirmed Tomko's identity as an informant, now seek summary judgment for withholding the "information furnished" by Tomko—the second prong of Exemption 7(d). 5 U.S.C. § 552(b)(7)(D). They argue that such information about Tomko's criminal activities and that of other third parties carries "implied confidentiality" "due to the circumstances surrounding this individual's assistance, the risks he likely faced based on his assistance to the

FBI, the singular nature of the information he provided, and his relationship to the crimes."  Seidel Decl.  ¶ 57.

The D.C. Circuit has set forth a four-factor test to determine implied confidentiality.  *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).  These factors include (1) "the character of the crime at issue," (2) "the source's relation to the crime," (3) whether the source received payment, and (4) whether the source has an "ongoing relationship" with the law enforcement agency and typically communicates with the agency "only at locations and under conditions which assure the contact will not be noticed."  *Id.* (internal quotations and citations omitted).

Applying these factors, the court finds that the information that Tomko provided was impliedly confidential.  *See Spurling*, 425 F. Supp. 3d at 22 (finding that information provided by a law enforcement agency was impliedly confidential "thirty years" later).  According to the Seidel Declaration, after Tomko was indicted on mortgage fraud charges, he became an informant in 2009 because of his "relationship" and "proximity to the crimes" committed by "other third parties of investigative interest and involved business interactions."  Seidel Decl. ¶ 60.  Tomko's relationship with these third parties arose through his own "professional business."  *Id.*  Although Tomko is currently incarcerated and no longer an informant, if the information he provided was revealed, he could face "potential retaliation," the ongoing investigations or indictments of the third parties might be undermined, and the victims may be "unable to recover their losses."  *Id.*  Violence and risk of harm are precisely the reasons for an implied grant of confidentiality.  *See Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) ("The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of

confidentiality for such a source. They most assuredly do."); *Shores v. FBI*, 185 F. Supp. 2d 77, 83–84 (D.D.C. 2002) (finding that the threat of murder could justify implied confidentiality).

Plaintiff contends that Defendants' explanation is "boilerplate." Pl.'s Opp'n at 11. But the FBI routinely withholds confidential information from informants about third parties. *See, e.g.*, *Petrucelli v. U.S. Dep't of Just.*, 51 F. Supp. 3d 142, 170 (D.D.C. 2014) (relying on FBI declarant's assertion that disclosure of confidential information from an informant would risk harm to the informant and third parties). The FBI narrowly tailored its Exemption 7(d) justification to specific relationships Tomko developed while conducting the mortgage fraud scheme for which he was convicted. Seidel Decl. ¶ 11. If the identities of interviewees and witnesses who provide information about third parties' criminal activities are subject to implied confidentiality, then information from a confirmed, paid informant, like Tomko, must be given similar protection. *See Miller v. U.S. Dep't of Just.*, 562 F. Supp. 2d 82, 122 (D.D.C. 2008) (finding that the FBI could withhold the "identity of a third party interviewee who provided information during the course of the FBI's investigation of plaintiff and other individuals"); *Truesdale v. U.S. Dep't of Just.*, No. 03-cv-1332, 2005 WL 3294004, at *7 (D.D.C. Dec. 5, 2005) (finding that "there is an inference of implied confidentiality" when informants are witnesses to a crime).

The court therefore finds that Defendants' withholding of confidential information provided by Tomko is lawful under FOIA Exemption 7(d).

### c. FOIA Exemption 7(e) - Storage Method for Investigatory Evidence

Defendants also seek summary judgment on its withholding under the first clause of FOIA Exemption 7(e) of non-public details about its storage device and identification number used to collect investigatory evidence. Defs.' Mot. at 15–16; Seidel Decl. ¶¶ 64–65. To justify a withholding under Exemption 7(e), Defendants must demonstrate that the withheld information

would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). The first clause, relating to "techniques and procedures" for investigations, "provides categorical protection, requiring no demonstration of harm or balancing of interests." *Peter S. Herrick's Customs & Int'l Trade Newsl. v. U.S. Customs & Border Prot.*, No. 04-cv-00377, 2006 WL 1826185, at *7 (D.D.C. June 30, 2006).

Exemption 7(e) requires the government to meet a "relatively low bar" to justify withholdings. *See Blackwell*, 646 F.3d at 42. "[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *See id.* (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). And "where an agency 'specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference.'" *See Lardner v. U.S. Dep't of Just.*, 638 F. Supp. 2d 14, 31 (D.D.C. 2009) (quoting *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

Defendants satisfy their burden here. According to the Seidel Declaration, the FBI's "specific collection device, collection methods, and storage techniques and procedures" as to Tomko are not public. Seidel Decl. ¶ 64. The storage device at issue contains Tomko's "investigatory information relating to [the] mortgage fraud activities." *Id.* Attached to the device is a "device identification number." *Id.* That information "will be used for future retrieval" by the FBI to analyze other mortgage fraud crimes. *Id.* Publicizing any of this information would diminish these procedures' "relative utility" and "provide criminals" with information to "locate where investigatory information is stored." *Id.* ¶ 65.

Other courts in this district have upheld withholding similar storage techniques and devices. In fact, identifiers tied to the FBI's Geo-Drug Enforcement Program and Narcotics and Dangerous Drugs Information System are routinely withheld in this district for the same reason that the FBI argues here: that the identifiers could benefit opportunistic criminals at the agency's expense. *See Kowal v. U.S. Dep't of Just.*, No. 18-cv-938, 2021 WL 3363445, at *6 (D.D.C. Aug. 3, 2021) (finding that the FBI's Geo-Drug Enforcement Program identifiers and Narcotics and Dangerous Drugs Information System numbers are "routinely withheld"); *Higgins v. U.S. Dep't of Just.*, 919 F. Supp. 2d 131, 151 (D.D.C. 2013) (same); *Miller v. U.S. Dep't of Just.*, 872 F. Supp. 2d 12, 28–29 (D.D.C. 2012) (same); *Chavis v. U.S. Dep't of Just.*, No. 20-cv-00638, 2021 WL 1668069, at *8 (D.D.C. Apr. 28, 2021) (same). It makes little sense to bifurcate the identification number here from the storage device itself, especially when the latter contains actual investigatory product.

Accordingly, the court finds that Defendants' withholding of its storage method information was lawful under FOIA Exemption 7(e).

### d.   Tomko's Informant File

Finally, Defendants invoke FOIA Exemptions 6, 7(c), 7(d), and 7(e) to argue that Tomko's entire informant file can be categorically withheld. Defs.' Mot. at 12, 15–16.

The types of records normally exempt from disclosure within an informant file include photographs, maintenance and payment documents, record checks/database searches, interview forms, documents implementing sensitive investigative techniques, envelopes, other documentations, handwritten notes, and emails. Seidel Decl. ¶ 75. Here, Defendants attest that Tomko's informant file is largely separated into two categories: evidentiary/investigative and administrative materials. *Id.* ¶ 93. The first category contains information provided by the

informant and other physical or documentary evidence.  *Id.* ¶¶ 95–97.  The second contains reporting communications within the FBI, standardized forms, like informant payments, and administrative instructions.  *Id.* ¶¶ 98–101.

The D.C. Circuit permits agencies to apply a "categorical approach" to justify withholding decisions when "the FOIA litigation process threatens to reveal the very information [an] agency hopes to protect."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015) (internal quotation marks and citation omitted).  Under the categorical approach, "[t]he government may justify its withholdings and redactions category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied."  *Id.* at 1149–50 (internal quotation marks omitted).  The categorical approach is only appropriate, however, when "[t]he range of circumstances included in [each] category . . . characteristically support an inference that the statutory requirements for exemption are satisfied."  *Id.* at 1150 (alteration adopted and internal quotation marks omitted).

Defendants' categorical withholding appears to be appropriate under Exemption 7(d) for the information Tomko "furnished."  5 U.S.C. § 552(b)(7)(E).  As Defendants attest in the Seidel Declaration, informant files "by their very nature, consist of identifying information of confidential sources and information provided by these sources."  Seidel Decl. ¶ 77.  Tomko's identity is now confirmed.  But the information he provided remains sensitive.  For example, his file contains "personal identifiers, including social security number, home address and phone number, financial records, background and informant vetting documentation."  *Id.*  Disclosing "even seemingly benign information" such as "dates, times and other administrative markings" in Tomko's file "would reveal key pieces of information about when and what information particular informants

provided to the FBI." *Id.* Moreover, all other information that Tomko provided about investigatory subjects remains confidential because disclosure risks harm to the investigative process, the victims, and Tomko himself. *Id.* ¶ 78. The kind of information in Tomko's file thus supports a reasonable inference that it should remain confidential. *See id.* ¶ 89; *Williams*, 69 F.3d at 1159–60 (holding that because an informant "risked retaliation" if disclosure occurred, it was therefore "reasonable to infer" that the information provided was implicitly confidential and thus the entire category of information could be withheld). And requiring the FBI to provide a page-by-page accounting would disclose the precise information that it hopes to shield. Seidel Decl. ¶ 77.

Plaintiff's only rebuttal is that two payments that the FBI made to Tomko while he was an informant are already public. Pl.'s Opp'n at 5. But Tomko's informant file is likely to contain other payment information relating to nonpublic FBI investigations. Seidel Decl. ¶¶ 75, 89. Because Tomko's file includes information about the entire scope of his cooperation, the fact that two previous FBI payments to Tomko are public does not otherwise weaken the "inference" of confidentiality extended to Tomko's entire informant file. *Prison Legal News*, 787 F.3d at 1150.

### C. Foreseeable Harm

For Defendants to prevail on their motion for summary judgment on their claimed withholdings, they must show that it is "reasonably foresee[able] that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i). That burden is "independent and meaningful." *Leopold v. U.S. Dep't of Just.*, 94 F.4th 33, 37–38 (D.C. Cir. 2024) (internal quotation marks and citation omitted). Defendants "must provide a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede the interests protected by a FOIA exemption." *Id.* at 37 (internal quotation marks and citation omitted). Moreover, inquiry into

"whether the disclosure of [a requested] record would foreseeably harm an interest protected by the exemption [is] distinct" from the question of "whether a requested record falls within an exemption" in the first place. *Id.*; *see also id.* at 37–38 (describing the separate inquiries as "consecutive" or "sequential"). Still, if a requested record is within the scope of a FOIA exemption, that "goes a long way to meeting the foreseeable harm requirement." *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 127 (D.D.C. 2021).

Defendants have met their burden. They argue, and the court agrees, that "with respect to every record (or portion thereof) satisfying one or more exemptions, the FBI individually considered whether foreseeable harm would result from disclosure of the record (or portion thereof)." Defs.' Mot. at 17. Regarding Exemption 7(c), the FBI's declarant explained how disclosing third party information could risk their identities, prejudice other investigations, benefit other lawbreakers, or encourage retaliation. Seidel Decl. ¶¶ 46–54. After all, "disclosure of identifying information is a harm in and of itself." *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021).

Similarly, the FBI declarant explained that harm could result from disclosure of the confidential information that Tomko provided under Exemption 7(d). Disclosing such information could create fear for other informants and adversely affect the FBI's investigations. Seidel Decl. ¶¶ 58–60. Finally, as the court briefly discussed in Section III.B.i.d, Exemption 7 (e) protects against revealing the FBI's storage device and identification numbers because disclosure could risk "a decrease in the viability of the FBI's informant program, hindering the FBI's ability to enforce the law, and risk increase of law enforcement circumvention." *Id.* ¶ 90.

Therefore, the court will grant summary judgment to Defendants for each of its claimed withholdings under FOIA Exemptions 7(c)–(e).

### D. Segregability

Finally, Defendants are entitled to the presumption that they fulfilled their segregation duty when they so swear; that presumption can only be overcome by some "quantum of evidence" credibly put forward by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Plaintiff provides no such evidence.

The FBI's declarant avers that it processed all records responsive to Plaintiff's FOIA request to achieve maximum disclosure consistent with the access provisions of FOIA. *See* Seidel Decl. ¶¶ 67, 91. Every effort was made to provide Plaintiff with all the information in the public domain and all reasonably segregable, non-exempt information. *Id.*

Moreover, the court finds that Defendants performed an "independent consideration of whether any portion of" the exempted Tomko records "could be segregated and released without causing foreseeable harm." *Rudometkin v. United States*, No. 23-5180, 2025 WL 1634729, at *8 (D.C. Cir. June 10, 2025). For example, according to the Siedel Declaration, any description of the information withheld, beyond what is disclosed in the supporting declaration, could lead to the identification of properly exempt information. *See* Seidel Decl. ¶¶ 67, 91. Specifically, the FBI conducted a segregability analysis as to all pages released in part, *see id.* ¶ 68, and all pages withheld in full, *see id.* ¶ 69. Together, that is sufficient to satisfy the FBI's burden.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment.  A separate order will follow shortly.


Date: June 11, 2025


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge